Giles, J.

Introduction

Plaintiff Diane Krueger (“plaintiff’) has brought this suit under the wrongful death statute (G.L.c. 229, §2) on behalf of the estate of her deceased son, Scott S. Krueger (“Krueger” or “decedent”). The complaint is in two counts as to all defendants. Count I alleges negligence and seeks compensatory damages. Count II alleges gross negligence and recklessness and seeks punitive damages. Defendants have moved to dismiss both counts on various grounds, including failure to state a claim, failure to effectuate proper service, and failure to provide an affidavit under G.L.c. 231, §60J. For the reasons set forth below, defendants’ motions are DENIED.

Background

In her complaint, plaintiff alleges the following facts.
In late August of 1997, Krueger was enrolled as a freshman at the Massachusetts Institute of Technology (“MIT”). Upon his arrival at MIT during “Residence/Orientation” week, he was required to choose a residence from among MIT’s dormitories, or “Institute Approved Houses.” Krueger decided to accept a bid to “pledge” and move into the FIJI House, located at 28 The Fenway, one of MIT’s “Institute Approved Houses.” The FIJI House, or the Iota Mu Chapter of Phi Gamma Delta, was an unincorporated association of undergraduate MIT students operating as a fraternity, affiliated with MIT and chartered by the Fraternity of Phi Gamma Delta, also known as FIJI National, a corporation headquartered in Lexington, Kentucky. The Malcolm Cotton Brown Corporation (“MCB”), a Massachusetts corporation, was the “house corporation" of the FIJI House. MCB owned, controlled, and held the dormitory license issued by the City of Boston for the FIJI House.
In September of 1997, defendants Jonathan Loflin (“Loflin”), Charles Yoo (‘Yoo”). Daniel Hermann (“Hermann”), Athanasios Dousis (“Dousis”), Edward Gordon (“Gordon”), and Richard Conway (“Conway”), among .others at the FIJI House, organized a pledge initiation event known as “Animal House’ Night” to be held on September 26th. Each of these defendants was an officer of the FIJI House. Prior to the event, “Pledge Trainer” Yoo informed the twelve FIJI House freshmen pledges that, on that date, they would be required to attend a mandatory, initiation-related event at the FIJI House during which the pledges would be expected collectively to consume a prescribed amount of alcohol provided by the FIJI House. On the night of September 26th Loflin, Yoo, and other members of the FIJI House ordered the pledges into a designated room and instructed them to consume a minimum of two cases of beer and a “fifth”[2] of whiskey, which were provided by Loflin, Yoo, and others, by the end of the movie “Animal House,” which the pledges were to watch. Krueger and the other pledges complied.
After the pledges had consumed the prescribed amount of alcohol, other FIJI House members, including Loflin, Yoo, and Kevin McDonald (“McDonald"), entered the room to continue the fraternity ritual by introducing each pledge to his “Big Brother.” Each pledge was provided a further bottle of alcohol to share with his new “Big Brother.” Krueger’s “Big Brother,” McDonald, provided him with a fifth of rum. Neither Krueger nor any of the other pledges had attained the legal drinking age of tweniy-one at the time of the ritual.
During the ritual, Krueger became ill, complained of nausea, began to vomit, and lapsed into unconsciousness. McDonald and another FIJI House resident then carried him to a basement room and left him there on a couch while they returned upstairs to continue drinking. Shortly thereafter, Krueger aspirated vomit and stopped breathing. Later, after finding Krueger in this condition, FIJI House members contacted MIT Campus Police in Cambridge, who subsequently contacted “911.” The Boston EMTs who responded to the scene found the decedent unconscious, blue in the face, and not breathing, but no one was performing CPR. Krueger was rushed by ambulance to the Beth Israel Deaconess Hospital, where he remained in a coma for more than forty hours before being pronounced dead on September 29, 1997.
On September 14, 1998, a Grand Jury returned two indictments against the FIJI House, one for hazing in violation of G.L.c. 269, §17, and the other for violation of G.L.c. 265, §13, for the manslaughter of Krueger. It is believed that those indictments were never prosecuted for want of service.
At all relevant times, FIJI House was organized and operated pursuant to rules, practices, and a charter issued by FIJI National. Since at least the early 1990s, there were numerous incidents of illegal, underage, and excessive drinking and dangerous behavior at the FIJI House.
*667 In the five years prior to Krueger’s death, emergency personnel had responded to the FIJI House more than a dozen times to handle complaints of rampant alcohol consumption, disturbances of the peace, and unlawful drinking activities and to provide medical assistance to severely intoxicated residents and their guests. Neighbors and other educational institutions near the FIJI House complained repeatedly about similar problems with the FIJI House. In April of 1996, the Boston Licensing Board suspended all rights to serve alcohol under the FIJI House’s dormitory license. The suspension was lifted in February of 1997; but, within five weeks, MIT’s Interfraternity Council again suspended FIJI’S alcohol rights. Krueger died within six weeks of the lifting of this suspension.
For a considerable time prior to the decedent’s death, FIJI National and MCB knew of illegal, underage, and excessive drinking and dangerous behavior at the FIJI House. Neither FIJI National nor the MCB Corporation took steps to investigate and prevent the dangerous conditions at the FIJI House. Despite a proclaimed policy against hazing, FIJI National and its officers knew for a considerable time before Krueger’s death that many of its chapters regularly engaged in hazing, alcohol-related and otherwise, and that hazing incidents had led to serious injury and death. FIJI National failed to take steps to investigate and prevent dangerous incidents at its chartered chapters.

Discussion

For purposes of a motion to dismiss a complaint, the allegations in the complaint must be treated as true; and the plaintiff is entitled to all favorable inferences. General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. 583, 584 (1992). A motion to dismiss should only be granted if “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” General Motors Acceptance Corp. 413 Mass. at 584, quoting Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In evaluating a Rule 12(b)(6) motion, the court considers the allegations in the complaint and may also consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint. Schaer v. Brandeis University, 432 Mass. 474, 477 (2000).
I. Fraternity of Phi Gamma Delta’s Motion to Dismiss
The Fraternity of Phi Gamma Delta, or FIJI National, advances various grounds for dismissal of plaintiffs complaint. First, FIJI National argues that, under Massachusetts law, it owed no actionable duty of care to Krueger. More specifically, FIJI National argues that, where plaintiff’s complaint alleges that Krueger, an adult,[3] died as a result of his own consumption of alcohol, and where plaintiff does not allege that FIJI National was a vendor of alcohol or that it supplied the alcohol consumed at the pledge event,[4] FIJI National breached no duty that it may have owed to Krueger. Likening the present case to the “social host” liability cases, FIJI National particularly cites Hamilton v. Ganias, 417 Mass. 666 (1994), where the court held that a non-vendor social host had no duty to an adult underage guest who became intoxicated by the voluntary consumption of alcohol and subsequently injured himself while riding his motorcycle. FIJI National argues that, because the instant case presents substantially similar facts, the Hamilton holding controls.
Plaintiff counters by arguing that the instant action is not one of “social host” liability and, thus, that the holding in Hamilton does not control. Plaintiff argues that FIJI National had a strong interest in recruiting new pledges to bolster its ranks and that this, combined with Krueger’s need for university housing and desire to become a fraternity brother, created a situation where he was pressured or coerced into performing the fraternity rituals. Essentially, plaintiff contends that these circumstances gave rise to a special relationship between FIJI National, the fraternity, and Krueger, one of its new pledges, which relationship gave rise to a duty on the part of FIJI National to take reasonable, preventive action to ensure the well-being of the decedent and its other new pledges as they participated in the pledge initiation rituals. In failing to take such action, plaintiff submits, FIJI National breached the duly of reasonable care it owed to Krueger.[5]
While the potential liability of a fraternal organization for injury resulting from the intoxication of a pledge during an initiation ritual requiring excessive consumption of alcohol appears to be a novel issue in Massachusetts, cases from other jurisdictions that have addressed this issue are instructive.[6] Most notable, perhaps, is Ballou v. Sigma Nu General Fraternity, 352 S.E.2d 488 (1986), a case with facts strikingly similar to the case at bar. In Ballou, plaintiffs decedent pledged the local chapter of the Sigma Nu fraternity at the University of South Carolina. Id. at 491. As part of the pledging process, all pledges had to attend an event known as “hell night.” Id. Prior to the event, the decedent, along with the fraternity’s other pledges, understood that they would be expected to do “a good bit of drinking” at the event. Id.
During the “hell night” event, members of the local chapter of the fraternity provided pledges with large quantities of a variety of different alcoholic beverages, which they expected and encouraged the pledges to drink. Id. Members also required the pledges to strip to their underwear, sing songs, and participate in other mandatory activities. Id. at 491-92. That night the decedent passed out on a couch in the fraternity lounge. Id. at 492. Several of the fraternity brothers checked on him a couple of hours later and were concerned with his pale color and lack of responsiveness. Id. They considered seeking medical attention but decided instead to leave him face down on the couch. Id. The following morning one of the fraternity brothers found him dead on the couch. Id. An autopsy *668 revealed that he had died from acute alcohol intoxication with terminal aspiration of gastric contents. Id.
Plaintiff in Ballou brought a wrongful death action on a negligence theory, alleging that Sigma Mu forced the decedent, by harassment and psychological manipulation, to consume a dangerous amount of alcohol, which resulted in his death. Plaintiff argued that the fraternity owed a duty of care to its initiates not to cause harm to them in the process, and that the evidence reasonably suggested that Sigma, through its agents (i.e., the local chapter and its members), had violated this duty. The defendant, Sigma, argued that there was no evidence of actionable negligence (i.e., no breach of duty). The court disagreed, noting that the Supreme Court of South Carolina previously had held that a fraternal organization owed a duty of care to its initiates not to cause harm to them in the initiation process. The court concluded that the evidence in the case reasonably suggested that Sigma, through its agents at the local chapter, created a hazardous situation by requiring the decedent to participate in the "hell night” activities and, in so doing, breached its duty of care to the decedent.
This court finds the South Carolina rule reasonable and the decision in Ballou persuasive.[7] While plaintiff in the case at bar has not specifically alleged coercion in the complaint, inferences from the alleged facts could support such a conclusion, thus distinguishing this case from Hamilton v. Ganias, 417 Mass. 666 (1994), and Manning v. Nobile, 411 Mass. 382 (1991).[8] Moreover, based on the allegations in the complaint and the reasonable inferences drawn therefrom, this court believes that the plaintiff may be able to produce evidence, first, of a special relationship between Krueger and FIJI National sufficient to give rise to a duty of reasonable care on the part of FIJI National toward him, and second, of a breach of that duty. Unlike in Hamilton, where the court “intentionally abstained from relying on the particular circumstances of [plaintiffs] consumption of alcohol and of his motor vehicle accident because they [were] not important to [the court’s] conclusion,” 417 Mass. at 668, this court believes that the circumstances surrounding Krueger's death are important to the disposition of this case and that plaintiff should have the opportunity to present evidence to prove her claims.[9]
Next, FIJI National argues that, even assuming that it owed a duty of reasonable care to Krueger, the common law bar to an action for personal injury contributed to by the injured party’s violation of a criminal statute[10] applies in this case. FIJI National asserts that, although G.L.c. 231, §85 provides that violation of a criminal statute alone shall not constitute a bar to recovery, violation of a criminal statute coupled with other reasons could operate to bar recovery.[11] See Flanagan v. Baker, 35 Mass.App.Ct. 444, 448 (1993). While the court accepts the proposition that there maybe situations where the bar will apply, it is not convinced that the instant case presents such a situation, at least not at this stage of the proceedings. Additional cases cited by defendants, most notably Gaines v. General Motors Corporation, 789 F.Sup. 38 (D.Mass. 1991), are not persuasive as they do not even attempt to harmonize the older Massachusetts case law[12] with the relevant language of G.L.c. 231, §85, which went into effect only in 1974. Moreover, FIJI National has premised this argument in part on the assertion that it explicitly prohibited the consumption of alcohol. As noted previously, this factual assertion is not apparent on the face of the complaint; and, thus, the court must assume FIJI National had no such policy.
Third, FIJI National contends that the court should dismiss plaintiff s complaint for failure to comply with the affidavit requirement of G.L.c. 231, 60J. Section 60J requires that, in any action for negligence in the serving of alcoholic beverages to a minor (or an intoxicated person), plaintiff must file an affidavit within ninety days of filing the complaint, setting forth sufficient facts to raise a legitimate question of liability appropriate for judicial inquiry. Plaintiff argues that §60 J does not apply in this case because this case does not fall within its purview. The court disagrees. The plain language of the statute clearly indicates that an affidavit is required in every action for negligence in serving alcohol to a minor. While that may be just one aspect of the present case, it nevertheless triggers the affidavit requirement. Although the court holds that the 60J affidavit requirement applies in this case, the court is not inclined to dismiss plaintiffs action for failure to file it in a timely manner. In the exercise of its discretion, and taking into consideration the novel issues raised and the complexity of the case, the court will allow the plaintiff an additional thirty days from the date of issuance of this decision within which to produce the affidavit. See Croteau v. Swansea Lounge, Inc., 402 Mass. 419, 422 (1988).
As for FIJI National's remaining arguments, the court finds no merit to them at this stage in the proceedings. It maybe appropriate, however, to revisit them in detail at a later time by means of a different vehicle, such as a motion for summary judgment.
II. The Malcolm Cotton Brown Corporation’s Motion to Dismiss
MCB makes essentially the same arguments as FIJI National in support of its motion to dismiss. With one exception, the court rejects each of MCB’s arguments for the same reasons articulated above. Because of the unique position of this defendant as the alleged landlord and dormitory license holder, however, the court specifically addresses its first argument regarding duty. In the complaint, plaintiff has alleged that MCB is the owner of the FIJI House property and the holder of the corresponding dormitory license issued by the Licensing Board for the City of Boston (“BLB”). Plaintiff claims that, as the landlord and dormitory license holder, MCB had a duty to exercise control over and supervise the premises and its occupants. She further asserts that MCB had knowledge of underage drinking and dangerous behavior at FIJI House and that it was *669 negligent in taking no action to curb or prevent such behavior. Plaintiff alleges that this negligence was in part the cause of her son’s death.
MCB argues that it was simply a landlord and, as such, owed no duty to the decedent to protect him from underage drinking and dangerous fraternity rituals conducted by FIJI House on the premises. This might be true if MCB were simply a landlord. However, this defendant also is alleged to be a dormitory license holder subject to rules and regulations of the BLB. According to §1:07(1) of the BLB’s general rules, “[licensees are responsible for ensuring that minors are not served alcoholic beverages and are not drinking alcoholic beverages on the licensed premises, whether served by an employee or handed to them by another patron.”[13] Though plaintiff ultimately may not be successful on the merits of her cause of action against MCB,[14] she has successfully stated the claim.
III. Motions to Dismiss of the Defendants Sued Only in their Representative Capacity as Fair and Adequate Representatives of FIJI House: Hermann, Dousis, Gordon, and Conway
Plaintiff has sued defendants Hermann, Dousis, Gordon, and Conway solely in their alleged capacity as fair and adequate representatives of the FIJI House, the local chapter of Phi Gamma Delta. Hermann, Dousis, Gordon, and Conway make several arguments in favor of dismissal. Insofar as these arguments parallel those of MCB and FIJI National, discussed and disposed of above, the court once again rejects them. The alleged FIJI House representatives, however, also argue that the court should dismiss the complaint as to them because they have not been properly served pursuant to Mass.R.Civ.P. 4(d)(2) and 23.2.
In Massachusetts, an unincorporated association may not be a party to litigation, see Save the Bay, Inc. v. Department of Pub. Utils., 366 Mass. 667, 675 (1975); however, representative members of such an association who will fairly and adequately protect the interests of the association and its members may sue or be sued on its behalf, see Cheever v. Graves, 32 Mass.App.Ct. 601, 604-05 (1992); Mass.R.Civ.P. 4(d)(2) and 23.2. Rule 4(d)(2) of the Massachusetts Rules of Civil Procedure governs service of process on unincorporated associations. Rule 23.2 sets forth the requirements for suing an unincorporated association by naming members who are fair and adequate representatives. Defendants argue that, in order to effectuate proper service under Rule 4(d)(2) on a fair and adequate representative of an unincorporated association under Rule 23.2, the association must still be in existence and the alleged fair and adequate representatives must still be officers of the association at the time of service. In support of their argument defendants cite Furek v. University of Delaware, Sigma Phi Epsilon et al., 594 A.2d 506, 514 (Del.Supr. 1991), where the Delaware Supreme Court, interpreting a similar provision of the Delaware rules of civil procedure, held that service on officers of a disbanded unincorporated association was a nullity.
While this may prove to be a winning argument at a later stage in the proceedings, it is not ground for dismissal. Defendants’ argument depends on their assertion that FIJI House, the alleged unincorporated association at issue, had disbanded and that the defendants no longer held any offices or had any authority in the association at the time process was served. While subsequent evidence may prove the truth of this assertion, it is not apparent on the face of the complaint. Accordingly, the court will not consider it at this time.
With regard to defendants’ argument that plaintiff failed to allege sufficient facts from which to conclude that defendants are fair and adequate representatives, the court once again disagrees. Plaintiff claims that the FIJI House officers “organized, executed and approved” the pledge event known as “ ‘Animal House’ Night.” Evidence offered to support this allegation also may be sufficient to support a determination that Hermann, Dousis, Gordon, and Conway are fair and adequate representatives of FIJI House.
IV. Motions to Dismiss of Defendants Sued in Their Individual and Representative Capacities
Plaintiff also has sued defendants Loflin, Yoo, and McDonald individually and in their alleged capacity as fair and adequate representatives of FIJI House. Loflin, Yoo, and McDonald advance arguments similar to those of the other defendants in support of their motions. For the reasons already stated, the court is not persuaded.

ORDER

For all the foregoing reasons, it is hereby ORDERED that defendants’ motions to dismiss be DENIED and that plaintiff file a General Laws Chapter 231, Section 60J affidavit within thirty (30) days hereof.

 A “fifth” is equivalent to 25.5 ounces.

 The complaint does not allege that Krueger was a minor at the time of his death. Therefore, defendants contend that the court should assume that the decedent was an adult at all relevant times pursuant to Mass.R.Civ.P. 9(a). After carefully reading Rule 9(a), the court is not convinced that plaintiff had the duty to allege minority, especially since it is defendants who raise the issue of Krueger’s age in support of their argument that he was an adult and, therefore, responsible for the consequences of his excessive drinking. In any event, as is clear in the body of the court’s decision, the court will assume for purposes of this motion that that Krueger was an adult at all relevant times.

 While plaintiff does not specifically allege that FIJI National supplied the alcohol to Krueger, plaintiff does allege that specific members of FIJI House did. At a later stage in the proceedings, plaintiff may attempt to prove that these FIJI House members were acting as agents of FIJI National and, therefore, that FIJI National is vicariously liable. Additionally, *670 FIJI National asserts several times in its memorandum in support of its motion to dismiss’ that, at the time of the “Animal House” pledge event, it had specifically prohibited the use of alcohol, presumably at the various FIJI fraternity houses and fraternity events around the country. While this factual allegation may be true, it is not apparent on the face of the complaint that FIJI National had declared such a policy. As such, the court must assume, for purposes of the instant motions to dismiss, that FIJI National made no such prohibition. The court notes, however, that plaintiffs complaint does allege that FIJI National had a declared policy against hazing.

 To prove its case against FIJI National, plaintiff will have to prove that the local chapter, FIJI House and its officers, were acting as agents of FI JI National within the scope of their agency.

 The following cases are noteworthy: Ballou v. Sigma Nu General Fraternity, 352 S.E.2d 488 (1986), discussed infra; Oja v. Grand Chapter of Theta Fraternity, 667 N.Y.S.2d 650 (1997); Nisbet v. Bucher, 949 S.W.2d 111 (1997); and Haben v. Anderson, 597 N.E.2d 655 (1992).

 While the opinion in Ballou was rendered on an appeal of a motion for judgment not withstanding the verdict, the legal principles are applicable to the present case.

 Even absent proof of coercion, plaintiff may be able to prove liability on other theories (e.g., social companion liability).

 Relying heavily on its earlier decision in Manning, the Hamilton court noted that the circumstances of the two cases were very similar, with the notable exception that the plaintiff in Hamilton was an adult underage drinker while the plaintiff .in Manning was an adult over the legal drinking age. Neither case involved allegations of coercion or pressure to consume excessive amounts of alcohol as the case at bar does.

 It is apparent on the face of the complaint that Krueger was in possession of alcohol prior to his death and, therefore, presumably in violation of G.L.c. 138, 34B.

 The following is the relevant language from G.L.c. 231, §85: “The violation of a criminal statute, ordinance or regulation by a plaintiff which contributed to said injury, death or damage, shall be considered as evidence of negligence of that plaintiff, but the violation of said statute, ordinance or regulation shall not as a matter of law and for that reason alone, serve to bar a plaintiff from recovery."

 The Gaines court relied on Baggs v Hirschfleld, 293 Mass. 1 (1935), and Patrican v. Garvey, 287 Mass. 62 (1934), to support its decision on this issue. Both of these cases were decided long before the relevant language of G.L.c. 231, §85 went into effect. Several defendants also cite these cases in their briefs.

 The general rules of the BLB are a matter of public record. Therefore, even though plaintiff did not allege the substance of the relevant rules or attach a copy of them to the complaint, the court may consider their content for purposes of the present motion. See Schaer v. Brandeis University, 432 Mass. 474, 477 (2000).

 There was an indication at the motion hearing that MCB may prove not to have been the license holder of record on the date in question.