WAYNE R. ULWICK *vs.* MATTHEW DeCHRISTOPHER.

Middlesex. September 10, 1991. - December 16, 1991.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Civil*, Summary judgment. *Negligence*, Consumption of alcoholic liquors by guest, Violation of statute. *Alcoholic Liquors*, Liability of host, Motor vehicle.

A social host is not liable in tort for injuries caused to a third person by an intoxicated guest at the host's party, in circumstances where the host neither served nor provided liquor to the guest. [404-405] LYNCH, J., concurring.

Where a social host had no control over the liquor his intoxicated guest brought to and consumed at the host's party, the host could not be held liable in tort under a theory of negligent encouragement for injuries caused to a third person by the guest. [405-407] LYNCH, J., concurring.

Where no common law duty was owed to third persons by a social host who neither served nor provided alcohol to guests at a party, the host's alleged criminal violations of G. L. c. 139, § 20, and G. L. c. 138, § 34C, with respect to keeping and carrying alcoholic beverages did not support a cause of action in tort by a third person injured by an intoxicated guest. [407-408] LYNCH, J., concurring.

CIVIL ACTION commenced in the Superior Court Department on October 24, 1986.

The case was heard by *James F. McHugh, III*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*James N. Esdaile, Jr.*, for the plaintiff.

*James J. Ronan* for the defendant.

GREANEY, J. This case raises the issue whether a social host may be held liable in tort for injuries caused to a third person by an intoxicated guest at the host's party where it appears that the host neither served nor provided liquor to

the guest. A judge of the Superior Court concluded, as matter of law, that there was no liability on the part of the social host, the defendant, Matthew DeChristopher, and granted the defendant's motion for summary judgment.[1] The plaintiff appealed, and we transferred the case to this court on our own motion. We affirm the judgment.

The relevant facts established for summary judgment purposes by statements, affidavits, depositions and other materials in the record are as follows. In setting out the facts, we resolve any conflicts in the summary judgment materials, and we make all logically permissible inferences, in the plaintiff's favor. *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 17 (1983).

In the early evening of September 26, 1986, Jeffrey Salvatore and two of his friends, all under the age of twenty-one, started drinking vodka at the Melrose home of one of the friends. Salvatore had at least one drink of vodka. The three traveled to a liquor store where they paid $5 to a passerby to purchase a bottle of vodka for their consumption. They then drove to a party at the home of the defendant (then age eighteen), who had informed some of his friends (although not Salvatore) that he planned to have a party that evening.

The party was by-and-large a "B.Y.O.B." ("Bring Your Own Booze") drinking party. It was not a dancing party, but hard rock music was playing in the background. The defendant was the sole host. His mother and stepfather were out of town, and no one else had been requested to supervise the defendant during his parents' absence. Many of the guests came to the party by automobile and parked their cars in the defendant's driveway and on the street in front of his home.

---

[1] The plaintiff has claims pending in the Superior Court against two other defendants, Jeffrey Salvatore and Emily Gulla. Salvatore was the operator of the car that struck and injured the plaintiff, and Gulla is the owner of the car. After the grant of summary judgment for the defendant DeChristopher, the entry of a separate judgment in his favor was certified pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 921 (1974), so that the grant of summary judgment in his favor could be appealed immediately.

At least forty to fifty people attended the party, many of them underage students or recent graduates of Melrose High School. The guests drank and played drinking games in the defendant's living room. During the party the defendant left the door to his house open so that others could enter without having to knock or ring. According to an affidavit in the record: "The kids went to these private drinking parties to avoid the risk of being arrested by police for drinking in the park and the golf course. Private parties were a safe place to drink."

The defendant also made space available in his kitchen refrigerator for beer brought by his guests. The refrigerator contained juice for mixing drinks, including pineapple juice, trays of ice and purchased bags of ice. Bottles of rum and vodka stood on the kitchen counter. Glasses were available in the kitchen cabinets. By 9 P.M., there were empty bottles and beer cans scattered all over the kitchen and living room. According to one account, approximately one-third of the people who came to the party were intoxicated.

Salvatore brought his own vodka to the kitchen, mixed it with juice, and drank at least one glass of vodka, at the party. The defendant did not serve or provide any alcohol to Salvatore, and the parties stipulated, for purposes of the present summary judgment motion, "that the only alcohol . . . Salvatore consumed [at] the [defendant's] home was alcohol that Salvatore, or others who were with him, brought to the home." Indeed, the liquor in the defendant's home was kept in a locked cabinet which was never unlocked during the evening.

The defendant circulated throughout the house during the party, beer in hand, socializing with his guests including Salvatore. He did not tell anyone to stop drinking. The defendant spoke briefly with Salvatore in the kitchen, while Salvatore was stirring a pitcher of vodka with a little pineapple juice. The two young men had gone to the same high school and knew of one another, but they were not friends. Salvatore was unsteady on his feet and visibly intoxicated, but the

defendant said nothing to Salvatore about his drinking or his ability to drive.

Salvatore stayed at the party for up to an hour and a half before leaving in his Chevrolet Camaro Iroc Z-28 automobile at about 10 P.M. Salvatore accelerated to over sixty miles per hour, crossed the center line, entered the oncoming lane, and hit the plaintiff, an on-duty police officer operating a police motorcycle in an area which was known for teenage drinking and driving. As a result of the collision, the plaintiff suffered severe and permanent physical injuries.

1. The plaintiff claims that these circumstances impose a common law duty in negligence on the defendant for the protection of travelers on the highways. The question whether the defendant owed a duty to travelers who might be injured by the negligent driving of an intoxicated guest who had been at the defendant's party presents "a question of law [which is] to be determined by reference to existing social values and customs and appropriate social policy." *Wallace v. Wilson, ante* 8, 12 (1991), and cases cited. As both parties recognize, our decision in *McGuiggan* v. *New England Tel. & Tel. Co.*, 398 Mass. 152 (1986), has direct relevance to whether a duty should be imposed in this case. We disagree with the plaintiff (as did the judge below) that *McGuiggan* provides a basis to establish such a duty.

In *McGuiggan*, adult hosts held a graduation party for their son. The hosts furnished alcoholic beverages which were both served directly to the guests and made available so guests could serve themselves. An eighteen year old male guest at the party became intoxicated, and, subsequently, as a result of his intoxication, negligently operated a car causing a death.[2] *McGuiggan, supra* at 153-155. We upheld the allowance of summary judgment for the hosts (on an issue not involved in this case), because there was no indication that the hosts knew the guest was intoxicated while at their

---

[2]The legal drinking age during the relevant times considered in the *McGuiggan* case was eighteen. See G. L. c. 138, § 34, as amended through St. 1977, c. 929, § 14.

home, or that he was intoxicated at any relevant time. *Id.* at 161-162.

In deciding *McGuiggan*, we took the opportunity to review and discuss the existing law elsewhere pertaining to the liability of adult social hosts to third parties injured by the negligent operation of a vehicle by an intoxicated guest who had been at the hosts' party. *Id.* at 155-161. The decisional authority discussed in *McGuiggan* involved situations in which the social hosts had furnished alcoholic beverages directly to an adult or minor guest who the hosts knew or should have known was intoxicated. Consistent with our review of the existing state of the law, we indicated in *McGuiggan* that "[w]e would recognize a social host's liability to a person injured by an intoxicated guest's negligent operation of a motor vehicle where a social host who knew or should have known that his guest was drunk, nevertheless gave him *or permitted him to take* an alcoholic drink and thereafter, because of his intoxication, the guest negligently operated a motor vehicle causing the third person's injury" (emphasis added). *Id.* at 162.

The plaintiff relies on the italicized language above and argues that it should be applied to impose liability in a case like this where a social host stands by while an intoxicated guest continues drinking. It is clear, however, from the facts and discussion in *McGuiggan* that the italicized language refers solely to a situation where a social host makes the host's liquor available to an intoxicated guest so the guest can continue to serve himself. Here, the defendant did not serve or make any alcohol available to Salvatore. The *McGuiggan* decision, therefore, does not afford a basis for the imposition of a common law duty on this defendant.

The plaintiff argues, nevertheless, that a common law duty should be found to exist in this case because the defendant negligently encouraged underage drinking in his home. By providing premises where minors might drink to excess, and tolerating them in doing so, the plaintiff contends that the defendant should be held as culpable as if he had served the drinks himself. We disagree.

As discussed in the *McGuiggan* case *supra*, the decisions that have recognized social host liability under a common law theory of negligence have done so only in circumstances where the host has served or provided liquor to an intoxicated guest. As stated in one of the earliest of those decisions, such a theory of liability "proceeds from the duty of care that accompanies control of the liquor supply." *Kelly* v. *Gwinnell*, 96 N.J. 538, 548 (1984). See *Dickinson* v. *Edwards*, 105 Wash. 2d 457, 466 (1986) ("the relevant inquiry [in determining negligence] is who had the authority to deny further service of alcohol when intoxication became apparent"). We think the factor of control should continue to be the dominant consideration in a case of this type.

Policy considerations support the imposition of a duty only in cases where the host can control and therefore regulate the supply of liquor. A host who furnishes liquor at a social gathering can deter a guest from becoming intoxicated. Because the alcohol being consumed belongs to the host, the host is like a bartender at a commercial establishment who can "shut off" a patron who is showing signs of excessive drinking. Society may fairly expect that in such circumstances, a host will deny additional liquor to an intoxicated guest.

The ability effectively to control a guest's excessive drinking is not present when the liquor belongs to the guest. Therefore, to impose a supervisory duty on social hosts to police the conduct of guests who drink their own liquor presents a number of practical difficulties. Hosts in these circumstances might be left with little alternative than to resort to physical force in order to discourage further drinking or to try to eject the guest, a solution that in many cases will aggravate the situation and put the drunk driver where he should not be — behind the wheel of a car. For such reasons, liability thus far has been found only in cases where drinks are made available by a host.

Further, in other contexts, we have rejected arguments that defendants, who neither provided alcoholic beverages nor made them available, owed a duty to travelers on the

highways to supervise their premises when they knew or reasonably should have known that drinking was taking place on the premises. See *Wallace* v. *Wilson, supra*; *Yakubowicz* v. *Paramount Pictures Co.*, 404 Mass. 624 (1989); *Dhimos* v. *Cormier*, 400 Mass. 504 (1987); *Langemann* v. *Davis*, 398 Mass. 166 (1986). We continue to follow the general principles expressed in these cases and in the *McGuiggan* decision. These principles, and the consideration that the duty of care follows from control over the liquor supply, furnish practical limits of potential liability. In the absence of such control in this case, we are not prepared to say that the common law should provide a remedy on the negligent encouragement theory advanced by the plaintiff.[3]

2. The plaintiff also argues that summary judgment was inappropriate because the defendant may have violated G. L. c. 139, § 20 (1990 ed.), because he allowed the use of premises for the illegal keeping of alcohol,[4] and G. L. c. 138,

---

[3]The plaintiff cites two Federal cases interpreting Pennsylvania law in support of his claim. *Fassett* v. *Delta Kappa Epsilon (N.Y.)*, 807 F.2d 1150 (3d Cir. 1986), cert denied sub nom. *Turgiss* v. *Fassett*, 481 U.S. 1070 (1987), and *Macleary* v. *Hines*, 817 F.2d 1081 (3d Cir. 1987). In both *Fassett* and *Macleary*, the courts reversed the entry of summary judgment where the record disclosed that the defendants had participated in the planning or funding of social events where liquor was consumed by minors. Under Pennsylvania law, however, the basis of civil liability in these circumstances is the violation of provisions of the Pennsylvania Crimes Code, under which minors may not consume alcohol and adults may not furnish it to them. See *Congini* v. *Portersville Valve Co.*, 504 Pa. 157, 161-163 (1983). By contrast, the rule in Massachusetts is that the violation of a statute does not by itself establish a breach of duty. See *Bennett* v. *Eagle Brook Country Store, Inc.*, 408 Mass. 355, 358-359 (1990), and cases cited. We note that the plaintiff has not cited to any other jurisdiction which has followed the reasoning of *Fassett* and *Macleary* to impose a common law duty in circumstances where the social host has not served or provided liquor to a minor guest.

[4]General Laws c. 139, § 20 (1990 ed.), reads, in pertinent part, as follows: "Whoever knowingly lets premises . . . under his control, for the purposes of . . . illegal keeping . . . of alcoholic beverages . . . or knowingly permits such premises, while under his control, to be used for such purposes, or after due notice of any such use omits to take all reasonable measures to eject therefrom the persons occupying the same as soon as it can lawfully be done, shall be punished by a fine of not less than one hun-

§ 34C (1990 ed.), because he acted as a joint venturer in permitting an underage person to possess alcoholic beverages.[5] We reject the argument.

Violations of these statutes invoke criminal penalties, but the statutes do not expressly or implicitly grant an independent ground for civil liability. *Three Sons, Inc.* v. *Phoenix Ins. Co.*, 357 Mass. 271, 275 (1970). *Barboza* v. *Decas*, 311 Mass. 10, 12 (1942). "Any liability on the defendant's part in such a situation must be grounded in the common law of negligence, *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 327 (1982), *Wiska* v. *St. Stanislaus Social Club, Inc.*, 7 Mass. App. Ct. 813, 816 (1979), meaning that the plaintiff has the burden of proving each and every element of that claim: duty, breach of duty (or, the element of negligence), causation (actual and proximate) and damages. *Cimino* v. *Milford Keg, Inc., supra* at 331-332 n.9. *Swift* v. *United States*, 866 F.2d 507, 508-509 (1st Cir. 1989) (construing Massachusetts law). See generally J.R. Nolan & L.J. Sartorio, Tort Law § 204, at 336 (2d ed. 1989). It has long been the rule in this Commonwealth that violation of a statute does not by itself establish a breach of duty, for it does not constitute negligence per se. *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 28 (1979), and cases cited." *Bennett* v. *Eagle Brook Country Store, Inc.*, 408 Mass. 355, 358-359 (1990). Since no common law duty exists here, it follows that the statutes relied on by the plaintiff do not of themselves create a cause of action in tort.

*Judgment affirmed.*

---

dred nor more than one thousand dollars or by imprisonment for not less than three months nor more than one year, or both."

[5]General Laws c. 138, § 34C (1990 ed.), reads, in pertinent part, as follows: "Whoever, being under twenty-one years of age and unaccompanied by his parent or legal guardian, knowingly . . . carries on his person any alcohol or alcoholic beverages shall be punished by a fine of not more than fifty dollars . . . ."

LYNCH, J. (concurring). I write separately only to note my disagreement with the court's suggestion (*ante* at 406) that a social host can deter a guest from becoming intoxicated and that a host is in the same position as a bartender in a commercial establishment who must refuse to serve an intoxicated person or incur civil and criminal penalties. I doubt that there are many among those that entertain in their homes who would, in a family setting, have the temerity to suggest that a parent or perhaps a mother-in-law should immediately cease the consumption of spirituous drink because, in the host's opinion, that family member was at risk of becoming intoxicated. Even greater folly might be required for a host to attempt to "shut off" a guest, as a bartender might, when that guest was not only a family member, but a former Marine Corps drill instructor, "Green Beret," or linebacker for the New England Patriots. As I said in *McGuiggan* v. *New England Tel. & Tel. Co.*, 398 Mass. 152, 164 (1986) (Lynch, J., concurring), "social activities themselves usually impose constraints on extreme behavior." If they do not, there is little a civilized host can do except pare down the guest list.