Robert E. Sampson & others[1] *vs.* Hugh G. MacDougall
& others.[2]

No. 02-P-998.

Norfolk. November 7, 2003. - February 2, 2004.

Present: Lenk, Grasso, & Cowin, JJ.

*Negligence*, Standard of care, Duty to prevent harm, Alcoholic liquors, Social host, Misrepresentation. *Alcoholic Liquors*, Liability of host.

In a civil action, a Superior Court judge properly declined to impose liability on social hosts and social companions for allegedly engaging in wilful, wanton, or reckless conduct by providing alcohol at a party to an eighteen year old guest who, in a drunken state after leaving the party, jumped from the top of a fence and was rendered a quadriplegic, where the social hosts and social companions had no duty to the guest. [397-400]

A Superior Court judge properly granted summary judgment dismissing a mother's negligent misrepresentation claim against a social host based on his comment at a party at which her eighteen year old son became intoxicated and subsequently seriously injured himself, where a claim for negligent misrepresentation only arises in a business context, not a social setting, and even if such liability extended to personal, rather than economic, injury, the host should not have reasonably foreseen that the son would be put in peril by the action or inaction of his mother, as the son's intoxication caused the harm. [400-402]

Civil action commenced in the Superior Court Department on August 4, 1999.

The case was heard by *Robert A. Mulligan*, J., on motions for summary judgment.

*Leonard F. Zandrow, Jr.* (*John W. Brister* with him) for the plaintiffs.

*Gerard R. Laurence* for Hugh G. MacDougall & another.

*Lewis C. Eisenberg* for Christopher Bellino.

[1]Marjorie T. Sampson and Robert H. Sampson.
[2]Priscilla E. MacDougall, Adam J. MacDougall, Christopher Bellino, Brian McCarthy, and Steven McDonald.

*Anna Katherine Bennett* for Brian McCarthy.

*Judith Ann Perritano* for Steven McDonald.

*Thomas M. Sullivan* for Adam J. MacDougall.

GRASSO, J. The plaintiffs seek to recover damages for injuries sustained by Robert E. Sampson (Robert) when, in a drunken state after leaving a party, he jumped from the top of a fence and was rendered a quadriplegic. At the time, Robert was eighteen years of age, an adult but an "underage" drinker. The plaintiffs commenced an action against Hugh and Priscilla Mac-Dougall (the MacDougalls), as social hosts of the party, and against Adam MacDougall, Christopher Bellino, Brian Mc-Carthy, and Steven McDonald,[3] as social companions who procured the alcohol, alleging, inter alia, that the defendants had engaged in wilful, wanton, or reckless conduct that resulted in serious harm to the plaintiffs. Additionally, plaintiff Marjorie Sampson asserted a claim for negligent misrepresentation against the MacDougalls. A judge in the Superior Court allowed the defendants' motions for summary judgment, concluding that they owed no duty of care to Robert, an intoxicated party guest who injured himself, and that a claim for negligent misrepresentation is one that arises only in a business context, not a social setting.[4] On appeal, the plaintiffs argue that the judge erred in (1) declining to impose liability on the defendants for allegedly engaging in wilful, wanton, or reckless conduct by providing alcohol to Robert; and (2) concluding that a statement made by Hugh MacDougall to Marjorie Sampson during the party did not constitute negligent misrepresentation. We affirm.

1. *Background.* We set forth the undisputed material facts, as we must for summary judgment purposes, in the light most favorable to the plaintiffs. See *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 17 (1983). On June 12, 1999, the MacDougalls hosted a high school graduation party for their daughter at their home in Randolph. They

---

[3]We subsequently refer to their first names for clarity of reference.

[4]In their amended complaint, the plaintiffs also asserted claims for reckless and negligent infliction of emotional distress and loss of consortium against all of the defendants. The plaintiffs have not argued in the present appeal that the motion judge improperly dismissed these claims when he granted summary judgment to the defendants.

invited approximately forty adults and twenty youngsters to the celebration, which began around 6:00 P.M. Adam MacDougall, and his friends Christopher, Brian, and Steven, decided to purchase a one-half keg of beer for the party, which they set up in Adam's bedroom, located in the basement of the MacDougall home. Robert, Adam, Christopher, Brian, and Steven were members of a group informally known as the "Mill Street crew," which often gathered on weekends to socialize and drink together. At the time of the graduation party, Adam was twenty-two years old, and Steven was twenty-one years old. Robert, Christopher, and Brian were all under twenty-one, the legal drinking age. Robert had recently celebrated his eighteenth birthday.

The one-half keg of beer was purchased by Adam. Christopher and Steven contributed forty and fifty dollars, respectively, toward its cost. In addition, Steven paid the deposit on the tap and bought cups and ice. Once the keg was set up in Adam's bedroom, the dispensing of beer was neither monitored nor controlled.

The police, who had been patrolling the neighborhood on another matter, arrived at the graduation party at approximately 10:15 P.M. They asked the MacDougalls to move several tubs of beer that had been in the backyard into the house so that the alcohol could be monitored more closely. The MacDougalls complied with the request, and the police left the premises without entering the house. The police subsequently called the MacDougalls around 11:00 P.M. and suggested that they end the party. Robert proceeded to walk home.

Following his arrival home, Robert received a telephone call from Brian, inviting him over for further socializing. Shortly after walking to Brian's house, Robert observed a fight in the street that had erupted between Hugh MacDougall and an unidentified person who had driven by on a motorcycle and had nearly collided with a guest leaving the MacDougalls' party. A police car approached Brian's house, responding to a call about a disturbance in the neighborhood. Not wanting to have an encounter with the police, Robert ran from the scene, attempted to climb over a six-foot fence at the end of Brian's driveway, panicked at the top of the fence, jumped off, and was rendered a quadriplegic in the ensuing fall.

In the professional opinion of the plaintiffs' expert, Dr. Scott E. Lukas, Robert's blood alcohol level at the hospital suggested that he probably drank the equivalent of seven 12-ounce cups of beer at the MacDougall's party. The keg had been Robert's only source of alcohol. Dr. Lukas opined further that Robert's judgment was dangerously impaired during the party and at the time of his subsequent accident.

2. *Duty owed to Robert.* The plaintiffs first contend that the MacDougalls, as social hosts, and Adam, Christopher, Brian, and Steven, as suppliers and joint venturers, had a duty to refrain from engaging in wilful, wanton, or reckless conduct in providing alcohol to Robert, who was under the legal drinking age. Because they breached this duty, the plaintiffs argue, the defendants are legally responsible for Robert's injuries. We disagree.

To prevail on their summary judgment motion, the defendants must establish that they owed no legal duty to the plaintiffs. See *Ulwick* v. *DeChristopher*, 411 Mass. 401, 408 (1991) (at trial, plaintiffs have burden of proving duty, breach of duty, causation, and damages). "Whether a defendant has a duty of care to the plaintiff in the circumstances is a question of law for the court, to be determined by reference to existing social values and customs and appropriate social policy." *O'Sullivan* v. *Shaw*, 431 Mass. 201, 203 (2000). If social hosts do have a duty to safeguard their guests from injury, such duty applies without regard to whether the social hosts were attentive or seriously inattentive to events transpiring on their premises. See *Hamilton* v. *Ganias*, 417 Mass. 666, 668 (1994) (particular circumstances of consumption of alcohol and of accident not important to conclusion that social hosts were not liable to intoxicated guest who injures himself). See also *Luoni* v. *Berube*, 431 Mass. 729, 730 n.2 (2000) (social hosts not liable to guest injured by fireworks brought to party and set off without hosts' explicit permission).

This is plainly not a case where an innocent third party was injured by the negligent actions of an intoxicated guest who had been served alcohol by a social host who knew, or should have known, that the guest was drunk. See *McGuiggan* v. *New England Tel. & Tel. Co.*, 398 Mass. 152, 162 (1986); *Hamilton* v. *Ganias, supra* at 668. In such circumstances, the court has

expressed a willingness to impose liability "based on the proposition that as between the social host and the public in general, the social host is in a far better position than third parties to prevent harm to others resulting from a guest's intoxication." *Manning* v. *Nobile*, 411 Mass. 382, 392 (1991). By contrast, and as is the case here, it is well established that a social host has no duty to a guest who becomes intoxicated and injures himself where the guest, although under the minimum drinking age, was not a minor. In such circumstances, "[a]s between the social host and the guest . . . the guest is in a better position to prevent harm to himself or herself." *Ibid.* See *Hamilton* v. *Ganias, supra* at 667-668 (adult underage drinker solely responsible for his own voluntary consumption of alcohol). Furthermore, social companions who directly supply alcohol to an adult drinker, or who facilitate its acquisition, do not owe that drinker any ongoing duty of care.[5] See *Panagakos* v. *Walsh*, 434 Mass. 353, 355, 357 (2001).

Here, Robert, although an underage drinker, was an adult who was responsible for his own conduct and injured himself. Robert's voluntary consumption of alcohol forecloses the existence of any duty owed to him by the defendants. See *Hamilton* v. *Ganias, supra* at 668. Neither the MacDougalls, as social hosts, nor Adam, Christopher, Brian, and Steven, who facilitated Robert's acquisition of alcohol, had a legal duty to prevent him from suffering the admittedly grave consequences of his self-inflicted intoxication.

The plaintiffs contend that social hosts and social companions who supply alcohol to an intoxicated adult should be held liable for injuries sustained by that adult where, as alleged by the plaintiffs here, their conduct was wilful, wanton, or reckless. "We have defined 'wilful, wanton, or reckless'[] conduct as: 'intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to

---

[5]We note that "[v]iolations of the Commonwealth's liquor laws concerning minors 'do not expressly or implicitly grant an independent ground for civil liability.' " *Cremins* v. *Clancy*, 415 Mass. 289, 295 (1993), quoting from *Ulwick* v. *DeChristopher*, 411 Mass. 401, 408 (1991). See *Panagakos* v. *Walsh*, 434 Mass. 353, 355 n.4 (2001).

another.' " *Manning* v. *Nobile, supra* at 387, quoting from *Commonwealth* v. *Catalina*, 407 Mass. 779, 789 (1990). Wilful, wanton, or reckless conduct is distinguishable from negligent conduct in two important respects. First, "the defendant must knowingly or intentionally disregard an unreasonable risk." *Id.* at 388. Second, when viewed prospectively, the risk "must entail a 'high degree of probability that substantial harm [will] result' to the plaintiff." *Id.*, quoting from *Desmond* v. *Boston Elev. Ry.*, 319 Mass. 13, 16 (1946). We reject the plaintiffs' invitation to extend liability to such situations.

The Legislature has stated that a person or entity licensed to sell alcoholic beverages, or serving alcohol as an incident of its business, may be liable for the negligent serving of alcohol to an intoxicated person who injures himself where there has been "wilful, wanton, or reckless conduct on the part of the licensee or such person or entity." G. L. c. 231, § 85T. However, that statute arose to fill a gap in the law. Absent G. L. c. 231, § 85T, there would be no liability to Robert even from a commercial provider of alcoholic beverages. See *Manning* v. *Nobile, supra* at 386-387. No appellate court in this Commonwealth has suggested that similar liability should be imposed on social hosts or social companions who provide alcohol to an intoxicated adult, and we decline to do so on these facts.[6] See *Tobin* v. *Norwood Country Club, Inc.*, 422 Mass. 126, 136 (1996) (G. L. c. 231, § 85T, "reflects the Legislature's unwillingness to allow a person who has voluntarily and responsibly put himself into a condition where his judgment and functioning are impaired to cast the blame on others, when he suffers injury as a result of that condition"). In social host cases, the focus is properly on the conduct of the intoxicated guest who voluntarily consumed the alcohol, not on the actions or inaction of the social hosts or social companions. See *Manning* v. *Nobile, supra* at 391-393;

---

[6]Moreover, even in the light most favorable to the plaintiffs, the defendants' actions do not rise to the level of wilful, wanton, or reckless conduct. There is no evidence whatsoever that Robert was visibly and obviously intoxicated at the party and that the defendants continued to serve or supply him with alcohol.

*Panagakos* v. *Walsh, supra* at 355-357.[7]

3. *Negligent misrepresentation.* Plaintiff Marjorie Sampson contends that, during the graduation party, Hugh MacDougall discouraged her from going down into the basement, where the keg was located, by telling her, "it's hot and smoky, I wouldn't go down there." She claims that such words constituted negligent misrepresentation that was actionable. We agree with the motion judge that Marjorie Sampson's claim fails as matter of law.

"In order to recover for negligent misrepresentation[,] a plaintiff must prove that the defendant (1) in the course of his business, (2) supplie[d] false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information." *Nota Constr. Corp.* v. *Keyes Assocs., Inc.*, 45 Mass. App. Ct. 15, 19-20 (1998). See *Golber* v. *BayBank Valley Trust Co.*, 46 Mass. App. Ct. 256, 257 (1999); Restatement (Second) of Torts § 552 (1977). "A person who makes representations under circumstances where he knows that the person receiving the representations will be relying upon them, has a duty to exercise reasonable care in making the representations." *Golber* v. *BayBank Valley Trust Co., supra* at 258.

Even were we to assume that Hugh MacDougall's statement was a representation, it was neither false nor made in a business context. Rather, it was a brief comment on his perception of the condition of his basement during the party, nothing more. Our cases have not recognized a cause of action for negligent misrepresentation based on comments made during a purely social interaction, and we decline to do so now.

---

[7]We acknowledge dictum in *Hamilton* v. *Ganias*, 417 Mass. 666, 667 n.4 (1994), but conclude that this does not mandate a different conclusion from the one we reach today. General Laws c. 231, § 85T, is a statement of public policy; liability that would otherwise not exist is imposed on a commercial server of alcoholic beverages when an intoxicated customer injures himself, but only when the server's conduct rises to the level of being wilful, wanton, or reckless.

Contrary to Sampson's argument, the fact that Hugh Mac-
Dougall failed to specifically inform her that there was a keg in
the basement, from which party guests could drink, does not
render her claim actionable. Mere silence or nondisclosure does
not impose liability in the absence of a duty to speak. See *Swin-
ton* v. *Whitinsville Sav. Bank*, 311 Mass. 677, 678-679 (1942).
Nor was there a special relationship between Hugh MacDougall
and Marjorie Sampson that would have imposed on him an
obligation to inform her about the keg. See *Kannavos* v. *An-
nino*, 356 Mass. 42, 48 (1969) (nondisclosure may be actionable
where relationship of parties creates particular legal or equitable
obligation to communicate all facts); *Golber* v. *BayBank Valley
Trust Co.*, *supra* at 258 (same). Hugh MacDougall did nothing
to prevent Sampson from entering the basement to ascertain the
situation for herself.

Equally unpersuasive is Marjorie Sampson's contention that
her cause of action for negligent misrepresentation should be
governed by Restatement (Second) of Torts § 311 (1965), which
provides, in pertinent part, that "[o]ne who negligently gives
false information to another is subject to liability for physical
harm caused by action taken by the other in reasonable reliance
upon such information." Sampson asserts that § 311 extends li-
ability under a theory of negligent misrepresentation beyond
mere economic harm sustained in a business setting to any
personal injury sustained as a result of the misrepresentation. In
particular, she relies on comment c, which provides that the rule
set forth in § 311 may be applicable "where the information
given is purely gratuitous, and entirely unrelated to any interest
of the actor, or any activity from which he derives any benefit."
Restatement (Second) of Torts § 311 comment c. Even were we
to recognize the duties imposed by § 311, this would not avail
Sampson. Here, Sampson herself sustained no personal injury in
reliance on Hugh MacDougall's comment. Her injury, if any, is
derivatively based upon loss of consortium for injuries sustained
by Robert. Put differently, Hugh MacDougall should not have
reasonably foreseen that Robert would be put in peril by the ac-
tion or, in this case, the inaction of his mother in failing to
investigate the basement. See Restatement (Second) of Torts
§ 311(1)(b). See also *Whittaker* v. *Saraceno*, 418 Mass. 196,

199-200 (1994). The cause of the harm was ultimately Robert's own voluntary intoxication, not the behavior of his mother, his friends, or the hosts.

*Judgment affirmed.*