Gants, J.
On December 21, 2001, the defendant Ronald Gaspar (“Gaspar”), while driving home from an office Christmas party, crashed into a car driven by the plaintiff Hugh O’Connor (“O’Connor”), causing *303 O’Connor serious injury. O’Connor has filed this negligence action against Gaspar and Gaspar’s employer, Peabody Office Furniture, Inc. (“Peabody”), which hosted the Christmas party. Peabody and O’Connor have filed cross motions for summary judgment. After hearing and for the reasons stated below, Peabody’s motion for summary judgment is DENIED and O’Connor’s cross motion for summary judgment is also DENIED.
BACKGROUND
In evaluating a motion for summary judgment, I must rely on facts not in dispute as well as disputed facts viewed in the light most favorable to the nonmov-ing party. Beal v. Board of Selectmen oJHingham, 419 Mass. 535, 539 (1995). The facts stated below are presented in the light most favorable to the plaintiff and should not be misunderstood as findings of the Court.
At roughly 4:30 p.m. on December 21, 2001, Officer Julie Brydees of the Arlington Police Department responded to a head-on automobile accident on Mystic Street in Arlington. When she arrived at the scene, she observed that Gaspar was noticeably intoxicated, with red, blood-shot eyes, slurred speech, and a strong odor of alcohol. Gaspar could not form complete sentences, but instead mumbled words that the officer found to be incomprehensible. When tested, his blood alcohol level was .23, well above the legal standard for intoxication.
Gaspar was a senior vice-president in charge of sales at Peabody, having worked there for seventeen years. On the morning of December 21, Gaspar went to work at Peabody’s Burlington office, then left at noon to go to the Boston Racquet Club on Summer Street in Boston. That morning, without Gaspar’s knowledge, a salesperson who worked with him (Karen Hayes) had left a bottle of vodka on his desk as a gift. While Gaspar was returning from the Boston Racquet Club, another co-worker (Richard Poverman) called Gaspar on his cell phone, told him about the bottle of vodka on Gaspar’s desk, and asked if he could open it. Gaspar gave Poverman his permission to open the bottle.
Gaspar returned to the Burlington office at roughly 1:30 p.m. to attend the office Christmas party, having eaten neither breakfast nor lunch that day. The party was attended by roughly a dozen Peabody employees, including Jonathan Peabody, Peabody’s President, and Jim McCann, its General Manager and Executive Vice President of Operations. While at the party, Gaspar drank roughly three vodka tonics that had been made for him by Poverman and another co-worker (Bob Dascoli) using his newly-opened bottle of vodka. The vodka tonics were served in coffee mugs. Poverman and Dascoli made no attempt to conceal the bottle of vodka or their making of vodka tonics for various employees. Gaspar made no attempt to conceal his drinking of alcohol at the party, and was seen to be drinking by Jonathan Peabody and McCann.
McCann had arranged for the purchase of wine, beer, diet Coke, and Pepsi at the Christmas party, but did not arrange for the purchase of any vodka or other liquor. He did not take any steps to supervise the consumption of alcohol at the party except to observe those attending “to make sure that nobody was intoxicated, drunk.” McCann testified that he did not know that vodka had been brought to the party, did not observe Gaspar to appear intoxicated, and did not know what Gaspar was drinking. Another employee who attended the party, Catherine Gifford, however, saw that Gaspar was drinking vodka tonics in the office library at the party and observed that Gaspar appeared to be getting “high.” Just before leaving the Christmas party at some time between 3:30 and 4:00 p.m. that day, Gaspar spoke with Jonathan Peabody. Jonathan Peabody knew that Gaspar had attended Alcoholics Anonymous meetings over the past ten years and that Gaspar had been treated by Peabody’s resident psychologist regarding alcohol-related issues. Yet, Jonathan Peabody did nothing to prevent or discourage Gaspar from driving home that afternoon.
DISCUSSION — EMPLOYER HOST LIABILITY
The Supreme Judicial Court has recognized that a social host may be liable “to a person injured by an intoxicated guest’s negligent operation of a motor vehicle where a social host who knew or should have known that his guest was drunk, nevertheless gave him or permitted him to take an alcoholic drink and thereafter, because of his intoxication, the guest negligently operated a motor vehicle causing the third party’s injury.” McGuiggan v. New England Tel. & Tel. Co., 398 Mass. 152, 162 (1986). See also Cremins v. Clancy, 415 Mass. 289, 291 (1993); Manning v. Nobile, 411 Mass. 382, 390 (1991). The Supreme Judicial Court has limited host liability to instances in which the social host controls the alcohol that is provided to guests.
No such duty of care has been imposed, however, when a private defendant has not engaged in conduct that fairly might be described as negligent by furnishing alcohol to an obviously intoxicated person (or to a minor). In addressing a claim of negligence, our cases have emphasized that a social host’s duty of care derives from the host’s actual control of the liquor supply. Ulwick v. DeChristopher, 411 Mass. 401, 407 (1991). Only when a host controls the liquor supply is it reasonable to assume that a host has the ability to monitor the guests’ alcohol consumption.
Mosko v. Raytheon Co., 416 Mass. 395, 402 (1993).
The Supreme Judicial Court has also declared that “the possible liability of an employer-host should be tested by existing standards governing a social host’s *304 liability.” Mosko v. Raytheon Co., 416 Mass, at 397. Therefore, in Mosko, when an employee got drunk at a Christmas party that was organized by Raytheon but held at a local restaurant with a cash bar, the Court held that the employer was not liable for a third party’s injury caused by the negligent driving of its employee because “Raytheon did not furnish or pay for the alcohol consumed by its employees, and there is nothing to show that Raytheon had any control over the manner in which the employees of [the restaurant] performed their bartending duties.” Id. at 403.
Peabody contends that Mosko is controlling precedent in the instant case. It correctly observes that, here, Peabody, through General Manager McCann, furnished and paid for the wine and beer at the Christmas party, but McCann did not furnish or pay for the vodka, and the record is clear that the only alcohol Gaspar drank at the party was vodka. Therefore, Peabody argues that it did not furnish or pay for the alcohol that led to Gaspar’s intoxication and, ultimately, the head-on collision with the plaintiff O’Connor’s car, and therefore cannot be found liable under the governing principles of social host liability.
The instant case, though, can be distinguished from Mosko in two ways. First, in Mosko, the drinks were served by restaurant employees over whom Raytheon had no control, while, here, the drinks served to Gaspar were served by Peabody employees over whom Peabody had a right of control. O’Connor therefore argues that Peabody should be found to have had actual control over the vodka, even though it did not provide it, because it had actual control over the employees who served and drank the vodka at an office party held within the office during working hours.
In Kelly v. Avon Tape, Inc., Justices Wilkins and Liacos adopted essentially this theory of employer host liability. 417 Mass. 587, 591 (1994). In Kelly, the employer did not serve or supply alcoholic beverages to its employee, Juan Rodriguez, but it did provide a refrigerator on its premises for the benefit of its employees, knew that its employees stored beer in it, knew that Rodriguez consumed beer at work on the day of the accident, knew or should have known that Rodriguez was intoxicated when he left work, and made no attempt either to stop his drinking or prevent him from driving. Id. at 588. Justices Wilkins and Liacos declared that the grant of summary judgment to the defendant should be reversed, because:
the defendant owed a duty to travelers on the highways, such as the plaintiffs, if (1) the defendant allowed the consumption of alcoholic beverages during working hours by the employee who caused the accident (in fact, encouraged the practice by knowingly providing refrigeration for alcoholic beverages), (2) the defendant knew or reasonably should have known both (a) that the employee who negligently caused the plaintiffs’ injuries was intoxicated as he was leaving work and (b) that the employee was immediately going to operate amotor vehicle, and (3) the defendant could have but did not take reasonable steps to prevent the employee from operating the motor vehicle. In these circumstances, it is irrelevant that the employer did not provide the alcoholic beverages. The employer was in a position more analogous to a licensed seller of alcoholic beverages than to a social host because the employer had control over the conduct of his employee in away no social host has over a guest. Indeed, on the facts that give rise to the duty I have identified, the employer had more control over its employee’s conduct than the operator of a bar or restaurant has over its customers.
Id. at 591.
Justices Wilkins and Liacos, however, spoke in dissent in Kelly. The majority of the Court held that the defendant employer was entitled to summary judgment because the employer did not furnish alcohol to Rodriguez and therefore owed no duty to protect members of the general public from the consequences of Rodriguez’s intoxication. Id. at 589. For all practical purposes, the precedent established in Kelly, albeit with a strong dissent, is that an employer is not liable for the injuries caused by the drunk driving of its employee whenever it did not furnish the alcohol that made him drunk, even if the employer knew that its employee was drinking at the workplace, tolerated this drinking, and knew he was drunk when he left work. This Court is controlled by that precedent and must honor it. It may turn out that, on appeal, a majority of the present Supreme Judicial Court will join the two former Chief Justices in rejecting this precedent, but that must be done by our highest Court; it may not be done by a Superior Court.[1]
The second way in which the instant case may be distinguished from Mosko is that, in Mosko, the Raytheon employee became drunk from alcohol purchased at the cash bar in the restaurant where the Raytheon Christmas party was held while, here, Gaspar became drunk from alcohol that he donated to the office Christmas party. The plaintiff argues that, since the vodka was furnished to the office Christmas party by Gaspar, Peabody’s senior vice president, the vodka was indeed furnished by Peabody, and therefore Peabody may be liable for social host liability if it is found to have furnished that alcohol to him when Peabody knew or should have known he was intoxicated.
This argument, like the previous one regarding control over the alcohol, points to another inherent difference between a traditional social host and an employer hosting an office party — a private social host *305 does not act through her guests, but an employer acts through the conduct of its officers and employees. If the Supreme Judicial Court believed that an employer furnished the intoxicating alcohol at an office party whenever any employee purchased the intoxicating alcohol, then the holdings in Mosko and Kelly would have been different because, in Mosko, the Raytheon employee purchased the alcohol at the cash bar and, in Kelly, the Avon Tape employee drank beer from an employee-stocked office refrigerator. When the Supreme Judicial Court in those cases set the pre-con-dition to employer host liability that the employer must have paid for or furnished the alcohol that led to the drunk driving, it cannot simply have meant that any employee of the employer paid for or furnished that alcohol. Rather, it must have meant that the alcohol either was purchased with company funds or that the officer or employee who furnished it did so within the scope of his employment, thereby making the employer vicariously responsible for the alcohol furnished.
Here, General Manager McCann was the Peabody officer responsible to provide alcohol for the office Christmas party and he only purchased wine and beer with Peabody funds. The vodka was a gift to Gaspar, which he agreed to contribute to the Christmas party and share with others at the party. The plaintiff argues that Gaspar acted within the scope of his employment in contributing that vodka. “The conduct of an agent is within the scope of employment if it is of the kind he is employed to perform, ... if it occurs substantially within the authorized time and space limits, . . . and if it is motivated, at least in part, by a purpose to serve the employer.” Mosko, 416 Mass, at 399. To be sure, Gaspar was not the officer responsible for the office Christmas party; that responsibility was delegated to General Manager McCann. Yet, Gaspar was a Senior Vice President in charge of sales at Peabody and supervised a sales staff. When Poverman telephoned Gas-par and asked if he could open the bottle of vodka on Gaspar’s desk, Gaspar knew that there was an office Christmas party that afternoon and that the vodka would be used at the party and shared with the other employees. A fact-finder may infer that the Christmas party, held during regular business hours at the office, was intended, at least in part, to have the business purpose of promoting employee morale, which is why Peabody used corporate funds to pay for the wine and beer used at the party. A fact-finder may also infer that promoting the morale of his sales staff was among the duties that Gaspar was expected to perform as Senior Vice President in charge of sales, and that his donation of the vodka was motivated, at least in part, to serve his employer by making his sales staff happy and helping them to enjoy the Christmas party. Therefore, this Court finds that there is a triable issue of fact as to whether Gaspar’s donation of that vodka to that party was within the scope of his employment and thereby resulted in Peabody vicariously furnishing the alcohol that resulted in Gaspar’s drunk driving and the automobile accident that followed.
This Court recognizes that an employee’s voluntary attendance at a social event sponsored by his employer off the employer’s premises and outside of normal working hours cannot reasonably be viewed as conduct within the scope of his employment. Mosko, 416 Mass, at 400. Yet, this Court also recognizes that there is a difference between an employee attending an office party (during which he cannot be said to be “working”) and an officer of a company helping to organize or manage an office party (during which he may be said to be “working”), especially when that office party is held on the employer’s premises during normal working hours.
This Court also recognizes that the Supreme Judicial Court appears in Mosko and Kelly to be attempting to create a practical, bright line rule for employer host liability in which an employer who buys or otherwise furnishes alcohol at an office party may have host liability, and an employer who does not buy or otherwise furnish alcohol need not endure this risk of liability. Yet, Gaspar’s act, as a Senior Vice President in charge of a sales staff, of contributing vodka to the office party falls so close to the scope of employment line and so straddles the practical, bright line that it is better to leave this issue for a juiy’s determination and not attempt to resolve it as a matter of law.
Since there is also evidence that Gaspar was visibly intoxicated while at the party, that Peabody continued to serve him alcohol even though it knew or should have known that Gaspar was intoxicated, and that Peabody failed to act even though it knew or should have known that he would be driving drunk when he left the party, Peabody’s motion for summary judgment must be denied.
ORDER
For the reasons stated above, Peabody’s motion for summary judgment is DENIED and O’Connor’s cross motion for summary judgment is also DENIED.

If the present Supreme Judicial Court were indeed to adopt the legal formulation proposed by the former Chief Justices, then Peabody’s motion for summary judgment would properly be denied via this formulation. Peabody plainly allowed the consumption of alcohol on its premises during working hours and there is a triable issue of fact as to whether Peabody knew or should have known that Gaspar was intoxicated and would be driving drunk when he left the party.