Nickerson, Gary A., J.
The plaintiff, Lisa Silva as Administratrix of the Estate of Michael Silva (“the Ad-ministratrix”), filed a wrongful death action against the defendants, Conor Markham (“Conor”), Courtney Markham (“Courtney”), and Dermis Markham (“Dennis”) (collectively “the Defendants”), seeking to hold them liable as social hosts in the death of her son, Michael Silva (“Silva”). The Defendants moved for summary judgment and the courtheld ahearing onApril 29,2008. The court, Kane, J., then allowed the Administratrix’s motion for a continuance under Mass.R.Civ.P. 56(f). After completing additional discovery, the parties submitted supplemental memoranda, but waived further oral argument. For the following reasons, the Defendants’ motion for summary judgment will be ALLOWED.

BACKGROUND

The following facts come from the summary judgment record, with the disputed facts viewed in the light most favorable to the non-moving party, the Ad-ministratrix. During an afternoon graduation party on June 5, 2004, Dermis gave his son, Conor, permission to invite friends to the Defendants’ beach house, located at 54 Hammond Road, Sandwich, Massachusetts (“the beach house”), later that evening to celebrate Conor’s graduation from high school. Dennis instructed Conor to keep the beach house in good condition, to be considerate to neighbors, and to keep the noise level down. While he had suspicions that alcohol might be consumed at the beach house, Dennis did not attend the parly.
Prior to the party, the beach house did not contain any alcohol, and Dennis did not supply any alcohol. Conor, age eighteen, invited around twenty friends to the beach house, and some of these guests arrived with their own alcohol. Conor’s sister, Courtney, age twenty-three, also invited around eight friends, and she arrived at the beach house later that night. While both consumed alcohol, neither Conor nor Courtney provided alcohol to their guests.
Silva, age nineteen, arrived at the party with two friends, including Travis Connor whom Conor had orally invited during his afternoon graduation party. Silva had been consuming beer prior to his arrival, and he arrived with a thirty-pack of beer. Conor had been acquainted with Silva through mutual friends and activities, such as soccer. Conor occasionally socialized with Silva and previously observed him smoke marijuana. At the time of the party, Conor knew Silva to be a heavy drinker.[3] Courtney also knew Silva and had previously observed him crash a motor vehicle while intoxicated. Dennis had knowledge that Silva had lived at a Juris Sietins’ home after being asked to leave his parents’ home due to substance abuse issues, and that Silva had been asked to leave the Sietins’ Home prior to June 5, 2004.
During tiie party, Conor and many of the guests, including Silva, became intoxicated. Conor made an announcement instructing the guests to spend the night, as the beach house had plenty of room. Dennis had given permission for guests to spend the night. The record indicates that neither Conor nor Courtney confiscated guests’ keys during the party.
Throughout the night, Silva consumed alcohol and socialized with other guests. At some point, Silva entered an upstairs bathroom with Hilary Sherwood and her boyfriend to ingest Oxycontin, which Silva had brought to the party. Hilary Sherwood testified at her deposition that neither she nor her boyfriend disclosed to other guests what transpired in the bathroom, but some other guests became aware by walking into the bathroom. After exiting the bathroom, Silva continued to socialize and consume alcohol.
At or around midnight, Silva fell asleep on a couch in the living room. Both Conor and Courtney recalled observing Silva sleeping in the living room. The record indicates that Conor and other guests were not concerned because Silva frequently “passed out” at parties. The record also indicates that unknown guests subsequently moved Silva to the floor, due to the couch being uncomfortable, and positioned him on his side with a blanket and pillow. Around 1:00 a.m., Jeff Dashuta observed Silva sleeping on the floor and tried *568 to wake him to say hello, but Silva grunted and rolled over. Conor had knowledge of Jeff Dashuta “checking” on Silva. Travis Connor testified at his deposition that another guest, Maggie Gretham, was “adamant” about checking on Silva.
Around 2:30 a.m., two guests met a police officer, who was responding to noise complaints, outside of the beach house. One guest told the police officer that no underage drinking was taking place inside and that everyone was going to sleep. The police officer then left. Both Conor and Courtney were aware that the police had been outside. As the parly ended, some guests spent the night while others left the beach house. Thereafter, at 10:30 a.m., guests awoke and noticed that Silva was not breathing. One guest attempted CPR while another called 911. In addition to an ambulance, police officers arrived to conduct interviews. Conor told a police officer that he had heard about Silva ingesting Oxycontin after Silva had passed out.[4] Courtney testified at her deposition that she assumed Silva had become intoxicated and just passed out. Silva died from an overdose of Oxycontin and alcohol.

DISCUSSION

I.Standard of Review

Summary judgment shall be granted when there is “no genuine issue as to any material fact,” and “the moving party is entitled to a judgment as a matter of law.” Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976), quoting Mass.R.Civ.P. 56(c). The burden of proof is on the moving party, “even if [he or she] would have no burden on an issue if the case were to go to trial.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The moving party may satisfy the burden by either submitting affirmative evidence that negates an essential element of the opposing party’s claim or demonstrating that the opposing party has no reasonable expectation of proving an essential element of their claim at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 808-09 (1991). When the moving party has met their burden, the “adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.” Mass.R.Civ.P. 56(e).

II.The Parties’ Arguments

The Defendants argue that they owed no legal duty to Silva as social hosts because it is undisputed that they neither supplied drugs nor alcohol. Additionally, the Defendants argue that they owed no duty because Silva, an adult, voluntarily consumed the alcohol and Oxycontin. In response, the Administratrix argues that the jury should decide whether the Defendants are liable under traditional social host liability principles, based on the facts in the record. Alternatively, the Administratrix takes the position that a legal duty arose because the Defendants either had a special relationship with Silva or voluntarily assumed a duty of care.

III.Whether the Defendants Owed Silva a Duty of Care as Social Hosts

Social host liability is premised under negligence, where the plaintiff cannot recover if the host owed no duty of care. See Langemann v. Davis, 398 Mass. 166, 168-69 (1986). While the court recognizes the jury’s “unique competence in applying the reasonable man standard,” Appleby v. Daily Hampshire Gazette, 395 Mass. 32, 37 (1985) (internal quotation omitted), the defendant must owe the plaintiff a legal duty before he or she can be liable for negligence. See Davis v. Westwood Group, 420 Mass. 739, 742-43 (1995). It is well-settled that whether the defendant owed the plaintiff a duty of care is a question of law for the court. See Wallace v. Wilson, 411 Mass. 8, 12 (1991), and cases cited.
Social hosts have only been held to owe a legal duty in certain circumstances. As the Supreme Judicial Court has expressed, “the decisions that have recognized social host liability under a common law theory of negligence have done so only in circumstances where the host has served or provided liquor to an intoxicated guest.” Ulwick v. DeChristopher, 411 Mass. 401, 406 (1991). Social host liability is limited to such circumstances because it “proceeds from the duty of care that accompanies control of the liquor supply.” Id., quoting Kelly v. Gwinnell, 96 N.J. 538, 548 (1984). If the host has no right to exercise control over the alcohol, then he or she owes no duty of care, even if the host provides the setting and atmosphere for alcohol consumption. See Cremins v. Clancy, 415 Mass. 289, 294 (1993). Considering the controlling authority on the issue, the court concludes that the Defendants did not owe Silva a duty of care as social hosts.
With regards to Dennis, this case is controlled by Langemann, where the Supreme Judicial Court concluded as a matter of law that social host liability does not apply to a parent-defendant that neither served alcohol nor made it available on the premises. 398 Mass, at 168. The court explained that the result would be the same, “even if [the parent] knew or reasonably should have known that alcoholic beverages would be available.” Id. The Supreme Judicial Court has also concluded that a parent owed no duty as a social host by supervising a party, when she neither served alcohol nor made it available to guests on the premises. See Wallace, 411 Mass. at 10-12. Consequently, as it is undisputed that Dennis neither served nor made alcohol or Oxycontin available on the premises, the court concludes that Dennis owed Silva no duty of care as a social host.
With regards to Conor and Courtney, the case is controlled by Ulwick, which involved a minor-defendant hosting a party where guests brought their own alcohol. 411 Mass, at 402-03. In Ulwick, the guests *569 made their alcohol available to anyone present, and the minor did not tell anyone to stop drinking. Id. The minor observed a visibly intoxicated guest, but said nothing about his drinking or ability to drive. Id. at 403-04. After leaving the defendant’s premises, the guest subsequently drove and injured a third party in an automobile accident. Id. at 404. The Supreme Judicial Court held that the minor owed no duty of care as a social host to the third party, because he neither served alcohol nor made it available. Id. at 406-07. The court rejected holding the minor liable simply for providing premises where minors might drink excessively, and for tolerating their excessive drinking. Id. at 405. Since it is undisputed that Conor and Courtney neither served nor made alcohol or Oxycontin available on the premises, the court concludes that Conor and Courtney owed Silva no duty of care as social hosts.[5]
Furthermore, the court agrees with the Defendants that they owed no duty of care to Silva as a matter of law, under Hamilton v. Ganias, 417 Mass. 666 (1994),[6] because Silva voluntarily consumed drugs and alcohol as an adult. In Hamilton, a nineteen-year-old filed suit against a social host, seeking to recover for injuries he sustained while intoxicated. Id. at 667. The Supreme Judicial Court cited Manning v. Nobile, 411 Mass. 382 (1991), where the court held that “a social host had no duty to an adult guest who became intoxicated by the voluntary consumption of alcohol and subsequently injured himself while negligently operating a motor vehicle." Id. at 666-67. The court in Hamilton concluded “that the reasons announced in the Manning case for denying social host liability to an intoxicated adult guest who injures himself apply to a nineteen year old who injures himself in similar circumstances.” Id. at 667. The court reasoned that a nineteen-year-old, even though an underage drinker, is an adult responsible for his own conduct, with substantial rights and obligations. IcL The court further reasoned that, “(t]he reasons for establishing social host liability to a third person injured by the negligence of an intoxicated guest in certain circumstances simply do not apply to the claim of an intoxicated guest who injures himself.” Id. at 668. Therefore, the adult guest’s “voluntary consumption of alcohol forecloses the existence of any duty owed to him by the defendants.” Id. The court noted that “(w]e have intentionally abstained from relying on the particular circumstance of [plaintiffs] consumption of alcohol and of his motor vehicle accident because they are not important to our conclusion.” Id.
Like the plaintiff in Hamilton, as a nineteen-year-old, Silva was an adult responsible for his actions, with substantial rights and obligations. 417 Mass, at 667. It is undisputed that Silva voluntarily attended the graduation party, and voluntarily consumed alcohol and Oxycontin. As explained in Manning, the duty of a social host “is based on the proposition that as between the social host and the public in general, the social host is in a far better position than third parties to prevent harm to others resulting from a guest’s intoxication. As between the social host and the guest, however, the guest is in a better position to prevent harm to himself or herself.” 411 Mass. at 392. For instance, “(t]he guest can refuse to drink, can drink only in moderation, or can arrange for a driver.” Id. Consequently, under the legal principles articulated in Manning and Hamilton, the Defendants had no “legal duty to prevent [Silva] from suffering the admittedly grave consequences of his self-inflicted intoxication.” Sampson v. MacDougall 60 Mass.App.Ct. 394, 398 (2004) [Hamilton applied to preclude liability when an eighteen-year-old plaintiff became quadriplegic after jumping off a six-foot fence while intoxicated).

TV. Whether the Defendants Owed Silva a Duty of Care on Other Grounds A. Special Relationship

The Administratrix attempts to avoid the precedent discussed above by arguing that a duty existed based on the special relationship between Silva and the Defendants. The Administratrix argues a special relationship existed because the Defendants had knowledge of Silva’s issues with substance abuse, yet they allowed him to become intoxicated and remain “passed out” on their premises without taking appropriate action. The Administratrix is correct that a special relationship can arise when “a defendant reasonably could foresee that he would be expected to take affirmative action to protect the plaintiff and could anticipate harm to the plaintiff from the failure to do so.” Irwin v. Ware, 392 Mass. 745, 756 (1984) (omitting citations). However, courts have rejected the special relationship argument when the social host neither provided the guest with alcohol, see O’Flynn v. Powers, 38 Mass.App.Ct. 936, 937 (1995) (citing Cremins, Ulwick, and Wallace), nor controlled the harmful item, see Luoni v. Berube, 431 Mass. 729, 732-33 (2000). See also Panagakos v. Walsh, 434 Mass. 353, 356 n.5 (2001) (no special relationship when “companions on a social venture” supplied alcohol to an individual who subsequently injured himself).
The court notes in Krueger v. Fraternity of Phi Gamma Delta, Inc., 2001 Mass.Super. LEXIS 430 at *14 (Mass.Super. 2001) [13 Mass. L. Rptr. 665], this court denied the defendants’ motion to dismiss, concluding that the plaintiff might be able to establish a special relationship, based on the factual allegations in the complaint. Krueger involved a wrongful death action where the decedent overdosed on alcohol during a fraternity initiation ritual. Id. at *2-4. The plaintiff argued that the defendants pressured or coerced the decedent to consume excessive amounts of alcohol, because the decedent needed university housing, the defendant-fraternity had an interest in recruiting new members, and the decedent wanted to join a *570 fraternity. Id. at *9-10. Even though the decedent was an adult underage drinker, the court distinguished Hamilton because of inferences of pressure or coercion from the fraternity members. Id. at *14, *14 n.9. Here, it is undisputed that the Defendants neither served alcohol nor drugs. Additionally, there are no facts suggesting any coercion or pressure, as Silva voluntarily attended the party with alcohol and Oxycontin, which he subsequently voluntarily consumed. Consequently, Krueger is distinguishable from the facts of this case. The Administratrix has failed to cite any authority finding a special relationship on similar facts. Therefore, considering the record and controlling authority, the court concludes that the Defendants owed Silva no duty of care based on the existence of a special relationship.

B. Voluntarily Assuming a Duty of Care

Finally, the Administratrix argues the Defendants voluntarily assumed a duty of care because they permitted Silva to excessively consume alcohol and Oxycontin, instructed guests to spend the night, and permitted Silva to remain “passed out.” The Ad-ministratrix also points to the periodic checks on Silva, the fact that Conor and Courtney were aware that police arrived in the middle of the night, and that Conor had heard that Silva ingested Oxycontin. The Administratrix argues the Defendants should have thereby taken action on behalf of Silva, such as making the police aware of his condition. The court acknowledges that “[i]f a person voluntarily assumes a duty or undertakes to render services to another that should have been seen as necessary for her protection, that person may be liable for harm caused because of the negligent performance of his undertaking.” Thorson v. Mandell 402 Mass. 744, 748 (1988). However, as explained in the cases cited by the Administratrix, if an actor takes certain action, the actor does not necessarily assume any broader duties. See Westwood, 420 Mass. at 746-47 (when hiring police officers to direct traffic, the defendant did not assume a duly to provide safe passage over a State highway by erecting a traffic light or pedestrian bridge); Thorson, 402 Mass. at 748 (“The creation of a policy against gymnastics in the auditorium was not an undertaking to render services for the protection of its users”). Courts generally require the defendant to directly assume the specific duty at issue. See Mullins v. Pine Manor Coll., 389 Mass. 47, 53 (1983) (a college voluntarily assumed a duly to protect students from the criminal acts of third parties, as “[ajdequate security is an indispensable part of the bundle of services which colleges, and Pine Manor, afford their students”).
Here, the Defendants allowed Silva onto their premises, and created an environment where Silva could excessively consume alcohol and Oxycontin. The facts in the record, however, do not support the position that the Defendants voluntarily assumed a duty to monitor and protect Silva. The Administratrix points to the periodic checks on Silva as evidence that Conor and Courtney voluntarily assumed a duty, yet it is undisputed that it was other guests who voluntarily checked on Silva. Conor did announce that guests could spend the night, but this action did not trigger a broader duty to monitor and protect Silva. See Manning, 411 Mass. at 384-85, 391-93 (no suggestion that the defendant assumed a duty of care by offering guests a place to stay and a ride home). The Ad-ministratrix points to the police arriving outside the beach house, and subsequently leaving when a guest stated no underage drinking was taking place and everyone was going to sleep. This fact still does not change the result, since it is undisputed that the statements were made by a guest, and there is no indication Conor or Courtney asked the guest to speak to the police officer.
Nevertheless, the court need not resolve this issue, because if the court concluded a duty existed on these grounds, then it would contravene Hamilton and Manning. The Defendants cite Panagakos where the plaintiff, the owner and operator of a bar, sued the defendants for contribution, arguing they would be directly liable to the decedent because they supplied alcohol. 434 Mass. at 354-55. As the decedent had been eighteen years old, the Supreme Judicial Court concluded that Hamilton controlled, which foreclosed any duly owed to the decedent by the defendants. Id. at 355. The plaintiff pointed to alternative theories for imposing a legal duty, such as “if the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect.” Id. at 356, quoting Restatement (Second) of Torts §321 (1965). The court concluded that it did not need to decide whether to adopt such legal principles, because “the application of such principles to the facts of the present case would effectively overrule” Hamilton and Manning, “a step we are disinclined to take.” Id. In a footnote, the court explained that the principles articulated in Hamilton and Manning “govern, regardless of the label put on the duty allegedly breached.” Id. at 357 n.6. Therefore, the court held that the decedent, “as an adult drinker, was responsible for his own conduct, and the social companions who helped him acquire alcoholic beverages did not owe him any duty to prevent him from suffering the consequences of that self-inflicted intoxication.” Id. at 357.
As discussed above, the court has concluded that the legal principles enunciated in Hamilton and Manning control, since it is undisputed that Silva was an adult responsible for his own conduct and that he voluntarily consumed alcohol and Oxycontin on the Defendants’ premises. The Supreme Judicial Court in Hamilton concluded that no duty is owed by a social host when an adult voluntary consumes alcohol. 417 Mass, at 668. The court based its decision “on the broad principle that [the plaintiff], although an under *571 age drinker, was an adult. . . who was responsible for his own conduct and injured himself.” Id. at 667. As the Appeals Court has explained, “[i]n social host cases, the focus is properly on the conduct of the intoxicated guest who voluntarily consumed the alcohol, not on the actions or inaction of the social hosts or social companions.” Sampson, 60 Mass.App.Ct. at 399 (citing Manning and Panagakos). Consequently, it would be inconsistent with Hamilton to conclude that the Defendants assumed a duty of care based on their conduct in allowing Silva to become intoxicated on their premises, even if they knew Silva had excessively consumed alcohol and Oxycontin. Therefore, the court concludes as a matter of law that the Defendants did not owe Silva a duty of care as social hosts, which makes summary judgment appropriate in this case.

ORDER

For the reasons stated above, it is hereby ORDERED that the Defendants’ motion for summary judgment be ALLOWED.

During his deposition, Conor testified that Silva appeared to be intoxicated 90% of the time they socialized outside of school.

During his deposition, Conor adamantly denied having any knowledge of Silva using Oxycontin until after the fact. For the purposes of this motion, however, the facts are viewed in the light most favorable to the Administratrix.

While the Administratrix contends that the facts support recovery for failure to properly supervise, the Supreme Judicial Court has “rejected arguments that defendants, who neither provided alcoholic beverages nor made them available, owed a common law duty to travelers on the highways or to others, to supervise their premises even though they knew, or reasonably should have known, that underage drinking was taking place on the premises.” Cremins, 415 Mass. at 292.

When the Supreme Judicial Court decided Hamilton, G.L.c. 140, §131 permitted persons eighteen and over to carry a firearm, but the legislature subsequently raised the age limit to twenty-one. See Commonwealth v. Kneram, 63 Mass.App.Ct. 371, 378 n.11 (2005). However, in Nunez v. Carrabba's Italian Grill, Inc., 448 Mass. 170, 176 n.6 (2007), the Supreme Judicial Court recognized that the principle enunciated in Hamilton remains valid.