JAMES WALLACE vs. AUDREY WILSON & others[1]
(and a companion case[2]).

Middlesex. May 7, 1991. - August 14, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Practice, Civil*, Summary judgment. *Negligence*, Consumption of alcoholic liquors by minor guest. *Alcoholic Liquors*, Liability of host.

A defendant was not liable for injuries sustained by plaintiffs as the result of assault and battery allegedly committed on them by minors who had consumed alcoholic beverages brought to a party given at the defendant's home and with the defendant's permission, by her seventeen year old daughter, while the defendant was at home. [11-12]

CIVIL ACTIONS commenced in the Superior Court Department on June 26, 1981, and November 4, 1981, respectively.

The cases were heard by *Peter M. Lauriat*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Gerard M. Mahaney* for John Tessier.

*Paul M. Richardson* (*Paul R. Kelley* with him) for the defendants.

*Thomas G. Waldstein*, for James Wallace, was present but did not argue.

O'CONNOR, J. The plaintiff in each of these cases alleges that he was assaulted and battered by the defendants DeLuca, Tobio, Conlon, and Leofanti outside the home of the defendants Audrey Wilson and Benjamin F. Wilson following a teenagers' party at the Wilsons' home. The claims

---

[1]Benjamin F. Wilson, Michael DeLuca, Michael Tobio, Patrick Conlon, and Joseph Leofanti.

[2]John Tessier vs. Audrey Wilson & others.

against DeLuca, Tobio, Conlon, and Leofanti are not at issue in this appeal, nor, for the reason we state below, is the claim against Benjamin F. Wilson. At issue on appeal are the plaintiffs' allegations against Audrey Wilson (Wilson) that their injuries resulted from her failure to supervise the party and particularly to monitor the teenagers' consumption of alcoholic beverages. The gravamen of the complaint against Wilson is that, although there may not be evidence that she supplied the beverages, she knew or had reason to know that the guests, all minors, would and in fact did consume alcohol at the party and that, as a result, they would present a risk of bodily harm to third persons in the position of the plaintiffs. This, the plaintiffs claim, violated a duty of reasonable care Wilson owed them.

The record is unclear, but it appears that the Wilsons either filed a motion for summary judgment in each case and the cases were then consolidated for the purpose of hearing and disposition of the motions, or that only one motion was filed and that that motion was understood by the parties and the motion judge to apply to both cases. At any rate, it is clear that the court was called upon to determine whether the Wilsons were entitled to summary judgment in both cases, and did so. We cannot tell from the record what materials relevant to the summary judgment issue were considered by the judge, but the parties seem to agree that Wilson's written statement to the police and her deposition, as well as the depositions of the plaintiff Tessier and the defendant Conlon, and the plaintiff Wallace's affidavit were made available to the judge. After a hearing, summary judgment was granted to the Wilsons in both cases, and the plaintiffs appealed. We transferred the cases here on our own initiative. We now affirm the judgments below.[3]

---

[3]The motion judge reports that Benjamin F. Wilson had been divorced from Audrey Wilson and "was not present or living at the house at any time relevant to these cases." The plaintiffs do not argue that the judge erred in granting summary judgment in Benjamin F. Wilson's favor. Thus, only the propriety of the judgment in favor of Audrey Wilson is at issue.

The relevant facts established for summary judgment purposes by the police statement, affidavit, and depositions are as follows. In setting out the facts, we resolve any conflicts in the summary judgment materials, and we make all logically permissible inferences, in the plaintiffs' favor. *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 17 (1983). Wilson reluctantly agreed to allow her seventeen year old daughter to hold the party at her home and chose to remain there as a chaperone because she "wanted to make sure everything was under control, [she] didn't want them to bring any liquor in." Wilson greeted the guests at the door, all of whom appeared to be about her daughter's age. There were three girls from Ashland, where the home was located, and five boys from Belmont. All were teenagers. Wilson did not serve alcoholic beverages to any of the guests and had none on the premises before the party except a bottle of wine that she kept upstairs. The boys were carrying six-packs of beer when they were greeted by Wilson and they made no effort to conceal them.

The party began about 8 P.M., and took place mainly in the den on the lower level of the split level house. One can leave the house from the lower level by going through the garage. Occasionally, the guests went in and out of the house through the garage without entering the upper part of the house where Wilson remained throughout most of the evening. She went downstairs twice. Everyone at the party was drinking beer, and liquor, too, and no effort was made to hide it.

Around 11 P.M., one of the girls, Corin Acherson, went upstairs to telephone her boy friend. Wilson overheard Acherson's end of the telephone conversation, and she overheard a subsequent conversation between Acherson and Wilson's daughter. Wilson learned that Acherson was upset by one of the boys having pinched or touched her, and she learned that Acherson's boy friend had said that he was going to come to the house and beat up the boy.

Some of the boys came upstairs and one of them spoke to Acherson's boy friend on the telephone. Then the boys went

downstairs and informed the others. It was then about 11:30 P.M. and Wilson told her daughter to end the party and send her guests home. Coincidentally, the plaintiffs and two other boys arrived, uninvited, at the Wilson home to see if they could join the party. They knew nothing about the Acherson incident or about her conversation with her boy friend. The plaintiff Tessier and another boy stayed in their automobile while the plaintiff Wallace and the fourth boy knocked on Wilson's door. Wilson had her daughter telephone the police. She then told Wallace that the party was over. There was a confrontation at the door between Wilson and the boys followed by a second call to the police.

"In the meantime," the judge's memorandum states, "the Belmont boys, hearing the confrontation at the door, went outside through the garage to confront the new arrivals. From the parked car, John Tessier saw one boy come around from the side of the house toward Wallace, carrying a pitchfork. Wallace was backing away from the house and toward the driveway when this boy began swinging at him with the pitchfork. Tessier got out of the car and started walking toward the Wilson property, and he saw a group of boys carrying sticks and poles. The Belmont boys violently attacked both Tessier and [Wallace] and inflicted serious injuries. The police arrived and took the Belmont boys to the police station, but no criminal charges were pressed."

In *Langemann* v. *Davis*, 398 Mass. 166 (1986), the plaintiff was injured in an automobile accident caused by the negligent driving of a minor who had been drinking beer at a party given by the defendant's daughter at the defendant's home with the defendant's consent. The defendant, who was not at home during the party, did not supply the beer and did not have alcoholic beverages on the premises before the party. *Id.* at 166-167. In affirming the allowance of the defendant's motion for summary judgment, we rejected the plaintiff's argument that, "because [the defendant] knew or reasonably should have known that alcoholic beverages would be available, [the defendant] could be found to have been negligent in failing to supervise her daughter's party."

*Id.* at 167. We said, "We reject the argument that a parent, who neither provides alcoholic beverages nor makes them available, owes a duty to travelers on the highways to supervise a party given by her minor child. We reach this conclusion even if [the defendant] knew or reasonably should have known that alcoholic beverages would be available. The defendant's conduct did not create a risk of injury to the plaintiff for which we are prepared to say the common law should provide a remedy." In arriving at his decision in these cases, the judge relied on *Langemann.*

We continue to adhere to the rule expressed in *Langemann*, and we think that that rule should apply here. It should make no difference that the plaintiffs, instead of being automobile accident victims, are victims of assault and battery, nor should it make a difference that the parent is at home when and where the party takes place, instead of being away. Whether there is a duty to be careful is a question of law, *Yakubowicz* v. *Paramount Pictures Corp.*, 404 Mass. 624, 629 (1989), *Monadnock Display Fireworks, Inc.* v. *Andover*, 388 Mass. 153, 156 (1983), to be determined by reference to existing social values and customs and appropriate social policy. *Yakubowicz, supra* at 629. *Schofield* v. *Merrill*, 386 Mass. 244, 246-254 (1982). In our view, sound social policy would not be advanced by a rule that would place a parent who absents himself or herself during a "young person's" party in a better position than a parent who remains on the scene to supervise the party. We conclude that summary judgment for the defendant was correctly ordered in both cases.

*Judgments affirmed.*