MARK JULIANO & others[1] *vs.* PETER SIMPSON & another.[2]

Norfolk. September 6, 2011. - February 21, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Alcoholic Liquors,* Liability of host. *Negligence,* Social host, Serving alcoholic liquors to guest, Alcoholic liquors.

This court declined to enlarge the scope of social host liability under the common law by extending a duty of care to an underage host who did not supply alcohol to underage guests, but provided a location where they were permitted to consume it, allegedly in violation of G. L. c. 138, § 34; rather, this court reaffirmed that liability attaches only where a social host either serves alcohol or exercises effective control over the supply of alcohol. [531-539] BOTSFORD, J., concurring in the judgment. GANTS, J., with whom IRELAND, C.J., joined, concurring in the judgment.

CIVIL ACTION commenced in the Superior Court Department on September 26, 2007.

A motion for partial summary judgment was heard by *Elizabeth B. Donovan,* J., and dismissal of certain claims and entry of final judgment was ordered by her.

The Supreme Judicial Court granted an application for direct appellate review.

*Richard P. Campbell* for the plaintiffs.

*Robert P. Powers* (*Andre A. Sansoucy & Christopher D. George* with him) for the defendants.

The following submitted briefs for amici curiae:

*Andrew M. Abraham, Thomas J. Carey, Jr., & J. Michael Conley* for Massachusetts Academy of Trial Attorneys.

*Mark W. Shaughnessy, Nicholas B. Kosiavelon, & Jeffrey E. Dolan* for Matthew Dusseault.

---

[1] Tracy Juliano and Rachel Juliano.

[2] Jessica A. Simpson. The defendants T & L, Inc., doing business as Capodanno's; Long Bach Nguyen; and Tina Nguyen are other parties in this case but are not parties to this appeal. Christian Dunbar was originally named a defendant below but a notice of voluntary dismissal with prejudice was entered as to him on April 9, 2008.

Duffly, J. We are asked to enlarge the scope of social host liability under our common law by extending a duty of care to an underage host who does not supply alcohol to underage guests, but provides a location where they are permitted to consume it. For the reasons stated herein, we decline to do so, and reaffirm that liability attaches only where a social host either serves alcohol or exercises effective control over the supply of alcohol.[3]

1. *Background.* Sixteen year old Rachel Juliano suffered serious injuries when the automobile in which she was a passenger struck a utility pole. She and the driver of the automobile, nineteen year old Christian Dunbar, had just left a party hosted by the defendant, nineteen year old Jessica A. Simpson, where Dunbar consumed alcoholic beverages he had obtained earlier that evening and brought to Jessica's house. Jessica's father, Peter Simpson, was not home at the time of the party, leaving Jessica in sole control of the premises.[4]

Juliano and her parents filed a complaint in the Superior Court, initially naming only Dunbar and Peter Simpson as defendants but later adding others, including Jessica Simpson.[5] The plaintiffs asserted that the defendants were liable on various claims under principles of common-law negligence.[6] After a majority of counts against the Simpsons were dismissed on

---

[3]We acknowledge the amicus briefs submitted by the Massachusetts Academy of Trial Attorneys and Matthew Dusseault.

[4]Because Peter and Jessica Simpson share a surname, we will refer to them by their first names.

[5]The plaintiffs have filed five amended complaints in which they variously added, dropped, or modified counts or parties, and corrected factual or clerical errors. Two of those complaints are relevant to this appeal. The fourth amended complaint, filed in November, 2008, was the subject of a partial summary judgment order in May, 2009, though final judgment was never entered. The fifth amended complaint, filed in December, 2009, asserted claims that were dismissed, and on which final judgment was entered, in June, 2010. These dismissed claims are the subject of this appeal.

[6]The fourth amended complaint sought damages on claims premised generally on the asserted negligent conduct of the defendants. In relevant part, it stated claims against Peter for premises liability, against Jessica for negligence, and against both for loss of consortium and intentional infliction of emotional distress. In an order dated May 29, 2009, a Superior Court judge granted summary judgment for Peter and Jessica on all except the negligence claim against Jessica. The judge declined, however, to enter final judgment on the dismissed claims, reasoning that to do so would allow for inefficient "piecemeal" appellate review of the case.

summary judgment, the plaintiffs amended their complaint to assert additional claims against Peter and Jessica. In relevant part, the plaintiffs alleged that Jessica was negligent for knowingly allowing Dunbar and other underage persons to possess alcohol on property under her control — conduct that the plaintiffs claimed violated G. L. c. 138, § 34 (statute).[7] The Superior Court judge who had earlier granted the Simpsons' motion for summary judgment ruled, sua sponte, that the plaintiffs had presented insufficient evidence to support their allegations of social host liability. The judge dismissed the new claims and ordered entry of separate and final judgment on them, permitting this appeal to proceed while the claims against other defendants remain pending. See Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974). We granted the plaintiffs' application for direct appellate review of the dismissed social host liability claims against Jessica.[8]

2. *Standard of review.* In dismissing the claims now before us, the Superior Court judge relied on the record that had been the basis for her earlier summary judgment. Because her memorandum of decision considers facts beyond those in the pleadings, we treat the order of dismissal as one for summary judgment. See, e.g., *Spring v. Geriatric Auth. of Holyoke*, 394 Mass. 274, 292 (1985).

We review a grant of summary judgment de novo to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of

---

[7]The statute provides in relevant part:

"[W]hoever furnishes any [alcoholic] beverage or alcohol for a person under 21 years of age shall be punished by a fine of not more than $2,000 or by imprisonment for not more than one year or both. For the purpose of this section the word 'furnish' shall mean to knowingly or intentionally supply, give, or provide to or allow a person under 21 years of age . . . to possess alcoholic beverages on premises or property owned or controlled by the person charged."

G. L. c. 138, § 34 (statute). Although Jessica was not prosecuted under the statute, it was conceded at oral argument that she "potentially could have been."

[8]The plaintiffs have not appealed from the dismissal of the social host liability claims against Peter.

law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991).

3. *Facts.* We set forth the relevant facts drawn from the summary judgment record, viewed in the light most favorable to the nonmoving party, here the plaintiffs.[9] See *Jupin* v. *Kask*, 447 Mass. 141, 143 (2006).

On July 2, 2007, Jessica invited several friends, including Dunbar, to a party at her home while her father was away. Dunbar attended with Juliano, his then girl friend. On their way to the party, Dunbar obtained a "thirty-pack" of beer and a bottle of rum at a package store.[10] They arrived at the Simpson residence between 6 P.M. and 8 P.M.,[11] and Dunbar brought the alcohol that he had procured into the house.

Over the course of the evening, Dunbar consumed one or two mixed drinks and six or seven of the cans of beer that he had brought to the party. Jessica drank beer as well, from a supply that she had obtained earlier. Although there were some alcoholic beverages belonging to Peter in the house, Jessica neither consumed those beverages nor offered them to her guests. Jessica stayed in the company of her guests throughout the evening. At one point, an uninvited attendee began to engage in antagonistic behavior toward her, pouring beer onto the floor inside the house; Jessica ordered him to leave, and he did.

Sometime before 11 P.M., Dunbar and Juliano began to argue outside the house. They were loud enough to draw the attention of several guests, as well as Jessica, who went out to investigate. Juliano pushed Dunbar, and a friend of his intervened, removing Dunbar to another part of the property while Jessica spoke alone with Juliano. Soon afterward, Juliano and Dunbar prepared to leave the party. Concerned that Dunbar was still upset from the argument and that Juliano had consumed too much alcohol to drive, Jessica proposed that she drive the two home. Juliano

---

[9]Although the claims before us were not dismissed pursuant to a motion for summary judgment, for the purpose of our review we treat the plaintiffs in their effective role as the nonmoving party.

[10]At his deposition, Dunbar testified only that he "got" the alcohol at the package store; nothing in the record clarifies how it was obtained.

[11]Dunbar drove another guest, who also sustained injuries in the accident, to and from Jessica's house. His presence in the vehicle is not relevant to this appeal.

agreed not to drive herself, but Dunbar insisted that he take Juliano home. At approximately 11 p.m., Dunbar and Juliano left the Simpson residence with Dunbar driving. Shortly thereafter, the automobile struck a utility pole, causing injuries to both Dunbar and Juliano.[12]

4. *Discussion.* The plaintiffs argue that common-law social host liability should attach in these circumstances. They rely primarily on the Legislature's enactment of G. L. c. 138, § 34, which proscribes the "furnish[ing]" of alcohol to a person under the age of twenty-one, and defines furnishing as "knowingly or intentionally supply[ing], giv[ing], or provid[ing] to or allow[ing] a person . . . to possess alcoholic beverages on premises or property owned or controlled by the person charged."

As an initial matter, we note that the statute neither expressly nor implicitly establishes a tort claim for social host liability. The statute is criminal on its face, providing that a violation is punishable by up to one year in prison and a $2,000 fine. Where, as here, a statute makes no express provision for a private right of action, legislative intent determines whether a private right may be inferred. *Loffredo* v. *Center for Addictive Behaviors*, 426 Mass. 541, 543 (1998). No intent to create a private right of action appears either in the text of the statute or in its legislative history. Indeed, the preamble to the 2000 amendment adding the relevant language declared that the purpose of that act was "to strengthen forthwith the criminal laws relative to the sale of alcoholic beverages to minors," St. 2000, c. 175, with no reference to civil liability.[13]

Nor can a social host's liability be established merely by

---

[12]An accident reconstruction specialist estimated that the vehicle had been traveling ninety-six miles per hour on a street with a posted speed limit of thirty miles per hour. Dunbar pleaded guilty to operating a motor vehicle under the influence of alcohol so as to cause serious bodily injury, G. L. c. 90, § 24L (2), and negligent operation of a motor vehicle, G. L. c. 90, § 24 (2) (*a*).

[13]The statute was amended at least partly in response to a 1996 incident in which a teenager drove under the influence of alcohol after a high school graduation party and died in a single-vehicle accident. See State House News Service, Nov. 12, 1997; Social Host Law Put to the Test, The Republican, Jan. 29, 2006. The adult party host was tried and acquitted under G. L. c. 138, § 34, which as then written did not proscribe "furnish[ing]" alcohol to minors in the sense of providing a location to drink. Compare G. L. c. 138, § 34, as amended through St. 2000, c. 175, with G. L. c. 138, § 34, as amended through St. 1988, c. 149.

proving that a defendant's conduct violated G. L. c. 138, § 34. The Commonwealth does not follow the doctrine of negligence per se, whereby the standard of lawful conduct in a criminal statute also sets a standard of care for tort actions and thus violation of a statute, without more, may establish a breach of duty. See *Bennett* v. *Eagle Brook Country Store, Inc.*, 408 Mass. 355, 358-359 (1990). "Rather, violation of a statute . . . is only 'some evidence' of the defendant's negligence as to all consequences the statute was intended to prevent." *Id.* at 359, quoting *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 327 (1982). A duty of care must already exist before a plaintiff can use a defendant's statutory violation to support a claim of tort liability. See, e.g., *Cremins* v. *Clancy*, 415 Mass. 289, 295 (1993); *Ulwick* v. *DeChristopher*, 411 Mass. 401, 408 (1991).

Because a violation of G. L. c. 138, § 34, would not itself establish that Jessica committed a breach of a duty of care, the plaintiffs' claims may proceed only if a social host's duty under our common law encompasses her conduct: knowingly allowing underage guests to possess alcohol in her home. The extent of that duty "is a question of law . . . to be determined by reference to existing social values and customs and appropriate social policy" (citations omitted). *Wallace* v. *Wilson*, 411 Mass. 8, 12 (1991).

To provide the context in which the claims before us arise, we begin by reviewing the development of social host liability in the Commonwealth. We first recognized that common-law tort liability may be imposed on social hosts in *McGuiggan* v. *New England Tel. & Tel. Co.*, 398 Mass. 152 (1986) (*McGuiggan*). In subsequent decisions, we have exercised caution when asked to expand on the duty we identified in that case, and consistently have found a duty only where a host either serves alcohol to guests or effectively controls the supply of alcohol.

We held in *McGuiggan* that a social host, who had served alcoholic beverages to guests at a party, was not liable for injuries sustained in a drunk driving accident caused by a guest, where there was no evidence that the guest had exhibited signs of intoxication when he was served drinks at the party. *Id.* at 161-162. However, we stated, for the first time:

> "We would recognize a social host's liability to a person

injured by an intoxicated guest's negligent operation of a motor vehicle where a social host who knew or should have known that his guest was drunk, nevertheless gave him or permitted him to take an alcoholic drink and thereafter, because of his intoxication, the guest negligently operated a motor vehicle causing the third person's injury."

*Id.* at 162. In reaching that conclusion, we expressly rejected a common-law rule that an intoxicated person's negligent operation of a motor vehicle while intoxicated is the sole proximate cause of subsequent injury, which in many jurisdictions had foreclosed claims against social hosts. *Id.* at 160.

On the same day that we announced our decision in *Mc-Guiggan*, we decided *Langemann* v. *Davis*, 398 Mass. 166 (1986) (*Langemann*). The defendant mother had allowed her minor daughter to host an unsupervised party at the family home. *Id.* at 166. We held that the mother owed no duty to a third party injured in an automobile accident caused by a partygoer who had consumed alcohol supplied by a fellow guest, even if she "knew or reasonably should have known that alcoholic beverages would be available." *Id.* at 168. The mother did not keep alcohol on the premises, and there was none present when she left. *Id.* at 166-167. Key to our decision was the fact that the mother "did not serve or make available any alcoholic beverage" to the driver. *Id.* at 168. We said that the defendant's conduct in those circumstances "did not create a risk of injury to the plaintiff for which we are prepared to say the common law should provide a remedy."[14] *Id.* at 169.

Read together, *McGuiggan* and *Langemann* recognized a common-law cause of action based on a new duty of social hosts, while also putting limitations on the potential scope of liability: a social host could be held liable for injury to third parties caused by the drunk driving of a guest only in cases where the host had actually served alcohol or made it available.

In subsequent decisions, while clarifying the common-law duty of social hosts, we have continued to rely on the rule set forth in *McGuiggan* and *Langemann*. In *Alioto* v. *Marnell*, 402

---

[14]We noted, however, that liability might lie against the person who supplied alcohol to the driver, if it could be shown that the negligent driving was the result of intoxication. *Langemann* v. *Davis*, 398 Mass. 166, 168 n.2 (1986).

Mass. 36 (1988), we affirmed summary judgment for the defend-ant parents who allowed their son to host a party, after which he drove while intoxicated and caused a fatal accident. Although the defendants had been aware of their son's propensity to abuse alcohol and knew that he had previously been arrested for operating a motor vehicle while under the influence, we said that no question of social host liability was presented because the defendants did not provide the alcohol for the party. *Id.* at 38. That restriction on the scope of liability was broadened in *Wallace* v. *Wilson, supra,* where the defendant mother knew that her daughter's underage guests were consuming alcohol that they brought to the family's home. Although some guests went on to commit a violent assault, we adhered to the rule expressed in *Langemann* and upheld summary judgment for the defendant, noting that it should make no difference "that the parent is at home . . . instead of being away." *Id.* at 12.

In *Ulwick* v. *DeChristopher, supra,* we addressed whether an underage host could be held liable in tort for the conduct of his intoxicated guests. The defendant, an eighteen year old whose parents were out of town, hosted a "bring your own booze" party for several underage friends. *Id.* at 402. An intoxicated guest drove away from the party and crashed into a motorcycle, causing the rider permanent injury. *Id.* at 404. We held that, where a social host lacked control over the supply of liquor to guests, the common law did not provide a remedy to third par-ties injured by those guests. *Id.* at 407. That rule flowed from *McGuiggan*'s holding that, for liability to attach, a host must actually serve or make the host's own liquor available; and from the line of cases, starting with *Langemann,* in which we declined to extend liability to persons who merely owned or controlled property where drinking occurred. *Id.* at 406-407.

Those considerations also informed our decision in *Cremins* v. *Clancy, supra.* The defendant was a seventeen year old host who had allowed an underage guest to consume his own beer in the host's house, and again while riding in the host's vehicle as they drove to another person's residence. *Id.* at 290-291. Some-one subsequently transported the guest back to the defendant's house, and from there the guest drove home, causing an acci-dent that injured third parties. *Id.* We rejected the argument that

the defendant had enjoyed sufficient control over the supply of alcohol at his home and in his car for liability to attach, and concluded that, although the defendant had "provided a setting and atmosphere" for underage drinking and "considered the supply of beer" as belonging to himself as well as his guests, he lacked "the obligation, or the means, effectively to control the supply of beer" and thus to stop others from drinking. *Id.* at 294. We concluded that, "[i]n the absence of a right to exercise effective control [over the supply of alcohol], the defendant was not subject to a duty" owed to innocent third parties. *Id.*[15]

In reaching these decisions, we have been mindful of policy considerations, examining them most thoroughly in *Ulwick* v. *DeChristopher*, *supra* at 406-407. In that case we expressed doubt that a social host can effectively prevent a guest from drinking the guest's own supply of alcohol, in contrast to the host who furnishes liquor to guests. The latter host, we said, is like a bartender in a licensed establishment who is well situated to "shut off" guests who should not be drinking because of age or intoxication, and we noted that "[s]ociety may fairly expect" a host in the latter situation to take such action. *Id.* at 406. We acknowledged also that there were "a number of practical difficulties" inherent in imposing on social hosts a duty "to police the conduct of guests who drink their own liquor." *Id.* Among those difficulties we noted the unpleasant — and potentially counterproductive — enforcement methods available to hosts,

---

[15]We have at times applied the principle governing social host liability to cases involving entities other than social hosts. Thus we have held that an employer acting as host to its employees is only liable for injuries to third parties where the employer controlled the supply of alcohol. See *Lev* v. *Beverly Enters.-Mass., Inc.*, 457 Mass. 234, 241-242 (2010); *Mosko* v. *Raytheon Co.*, 416 Mass. 395, 399-400 (1993). We have applied that principle also to a private carrier that allowed passengers to consume their own alcohol in the defendant company's vehicle, after which one of them drove and caused a fatal accident. See *Commerce Ins. Co.* v. *Ultimate Livery Serv., Inc.*, 452 Mass. 639, 645-646 (2008) (no social host liability, although claim could proceed on alternative theory of negligence). We have extended this reasoning beyond the context of alcohol service. See, e.g., *Luoni* v. *Berube*, 431 Mass. 729, 733-735 (2000) (social host owed no duty to third party where guests negligently set off fireworks that they had supplied). Contrast *Judge* v. *Carrai*, 77 Mass. App. Ct. 803, 807-809 (2010) (hosts who allowed softball game on their property, and supplied equipment for it, were not entitled to summary judgment against guest who was injured by errant line drive as she sat on porch with back to game).

such as physically ejecting an intoxicated guest from the property, thereby increasing the likelihood of that person driving while intoxicated. *Id.* Finally, we identified other contexts in which we had "rejected arguments that defendants, who neither provided alcoholic beverages nor made them available, owed a duty to travelers on the highways to supervise their premises when they knew or reasonably should have known that drinking was taking place on the premises." *Id.* at 406-407, and cases cited.[16]

Relying on "strong arguments of public policy," our appellate courts have identified "a limited number of circumstances in which, while all other legal requirements of negligence are satisfied, the imposition of a duty has been determined to be inappropriate or unworkable." *Doe* v. *Moe*, 63 Mass. App. Ct. 516, 519-520 (2005), quoting *Lewis* v. *Lewis*, 370 Mass. 619, 629 (1976). In light of the foregoing public policy considerations, we conclude that the proposed expansion of social host liability under our common law continues to be inadvisable. Cf. *Remy* v. *MacDonald*, 440 Mass. 675, 677 (2004).

We note as well the uncertain scope of liability under the proposed expansion. We have adhered consistently to the principle set forth in *McGuiggan*, requiring actual or constructive alcohol service or effective control of the alcohol supply, on the ground that it furnishes "practical limits of potential liability." *Ulwick* v.

---

[16]Where intoxicated guests have injured themselves rather than third parties, we have been even more reluctant to impose liability on social hosts. Thus we held in *Manning* v. *Nobile*, 411 Mass. 382 (1991), that a social host was not liable for serving alcohol to an obviously intoxicated adult guest who later injured himself while driving while under the influence. We reasoned that, unlike where a guest injures a third party, "[a]s between the social host and the guest . . . the guest is in a better position to prevent harm to himself or herself." *Id.* at 392. Examining the issue from a policy standpoint, we suggested that declining to impose liability in such a case might have a stronger deterrent effect on drunk driving than a rule imposing liability, because a "rule of nonliability emphasizes to persons who drink and then drive that the financial risk of self-inflicted injury . . . lies solely on the driver." *Id.* at 393.

We have applied that holding also to claims of social host liability for the self-inflicted injuries of intoxicated adult guests who have not reached the age of twenty-one. See *Hamilton* v. *Ganias*, 417 Mass. 666, 667 (1994) (reasoning in *Manning* v. *Nobile*, *supra*, applies to nineteen year old plaintiff because, "although an underage drinker, [he] was a [legal] adult . . . who was responsible for his own conduct"). See also *Panagakos* v. *Walsh*, 434 Mass. 353, 354-355 (2001); *Sampson* v. *MacDougall*, 60 Mass. App. Ct. 394, 397-398 (2004).

*DeChristopher, supra* at 407. If mere control of premises gave rise to a duty of care for social hosts, the difficulties facing judges and juries charged with ascertaining the limits of liability would be manifold. See, e.g., *Remy* v. *MacDonald, supra* at 678 (identifying challenges courts would face in refining scope of liability under proposed duty of care, including determining "the particular standard of conduct" to which defendants would be held); *McGuiggan, supra* at 164 (Lynch, J., concurring) (discussing factors that make problem of drunk driving by social guests well suited to legislative action, including social hosts' potentially massive financial exposure on liability claims and uncertainty as to what preventive steps would limit liability).[17]

Moreover, we are reluctant to impose a duty of care in the absence of "clear existing social values and customs" supporting such a step. See *Remy* v. *MacDonald, supra.* The plaintiffs point to the imposition of criminal liability under the statute as evidence that the Commonwealth embraces such clear values. However, the Legislature's subsequent refusals to add a civil liability component to the statute challenge that view, suggesting rather that there is not a "community consensus" regarding the proposed expansion of social host liability.[18] See *Schofield* v. *Merrill*, 386 Mass. 244, 248 (1982).

---

[17]Potentially vast consequences to liability insurance also are implicated by the proposed change. The Legislature is well positioned to monitor and regulate the field of insurance coverage, as it does already in the context of sale or service to minors by licensed establishments. See, e.g., G. L. c. 138, § 12 (requiring licensees to produce proof of insurance coverage, at or above amounts defined by statute, prior to liquor license issuance or renewal); G. L. c. 138, § 64B (requiring licensee applying for insurance coverage to reveal any recent instances in which its liquor license was revoked for sale or service to minors); G. L. c. 175, § 112A (defining terms of liquor liability policies offered by participants in joint underwriting association; enacted in response to insufficient availability of coverage in private insurance market, see *Peters* v. *United Nat'l Ins. Co.*, 53 Mass. App. Ct. 775, 780-782 [2002]); G. L. c. 231, § 60J (requiring that judgments be reported to Alcoholic Beverages Control Commission). Cf. *Filippone* v. *Mayor of Newton*, 392 Mass. 622, 629 n.9 (1984).

[18]Since the 2003-2004 legislative session, the Legislature has rejected four attempts to add a civil liability provision to G. L. c. 138, § 34. See *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 803 n.6 (1999); 2003 Senate Doc. No. 1100; 2005 Senate Doc. No. 1020; 2007 Senate Doc. No. 968; 2009 Senate Doc. No. 1775. Each bill sought to insert the following language into the statute: "Any person who violates this section shall be liable in tort for injuries or death caused to any person as a result of the operation by a person under the age of twenty-one who is under the influence of alcohol."

Just as there is no indication of consensus within the Commonwealth, neither has a single, broadly held view of the issue emerged nationally. Currently, nine States impose social host liability for injury to third parties where a host merely provides a location for underage drinking. Six of those States have imposed civil liability by statute. See Colo. Rev. Stat. § 12-47-801(4)(c) (2011) (liability capped at $150,000); Haw. Rev. Stat. Ann. § 663-41 (West 2008) (applies to hosts twenty-one years or older); Minn. Stat. § 340A.90 (2010) (applies to hosts twenty-one or older); Neb. Rev. Stat. § 53-404 (2010); Nev. Rev. Stat. § 41.1305(2) (2011); Tex. Alco. Bev. Code Ann. § 2.02(c) (West 2007) (applies to hosts twenty-one years or older, and only where drinking guest is under eighteen years). Two States impose liability under the per se negligence doctrine. See Fla. Stat. Ann. § 856.015 (West Supp. 2011); *Trainor* v. *Estate of Hansen*, 740 So. 2d 1201, 1202 (Fla. Dist. Ct. App. 1999), quoting *Newsome* v. *Haffner*, 710 So. 2d 184, 185-186 (Fla. Dist. Ct. App. 1998); 18 Pa. Cons. Stat. Ann. § 6308 (West Supp. 2011); 18 Pa. Cons. Stat. Ann. § 306 (West 1998); *Alumni Ass'n* v. *Sullivan*, 524 Pa. 356, 362-364 (1990), and cases cited. In only one instance has a State's highest court imposed such a duty by the application of common-law principles, as we are asked to do here. See *Biscan* v. *Brown*, 160 S.W.3d 462, 480-482 (Tenn. 2005) (adult host owed duty of reasonable care to third party injured by underage guest who consumed alcohol on defendant's property with defendant's knowledge; liability arose from special relationship between minor guests and adult host, who "certainly ha[d] some ability to control the conduct of his guests"). On the other hand, courts in at least four States have declined to impose liability premised on the control of property. See *Runyans* v. *Littrell*, 850 So. 2d 244, 245-246 (Ala. 2002); *Wright* v. *Sue & Charles, Inc.*, 131 Md. App. 466, 476-478 (Ct. Spec. App. 2000); *Knight* v. *Rower*, 170 Vt. 96, 101-102 (1999); *Nichols* v. *Progressive N. Ins. Co.*, 308 Wis. 2d 17, 38-39 (2008).

The plaintiffs make a compelling argument that underage drinking and driving is a persistent and widespread societal problem. The Legislature's decision to deter and punish those who facilitate such conduct by the imposition of jail sentences and financial penalties, along with the stigma of a permanent

criminal record, lends support to that argument. However, the public policy concerns raised in past social host cases remain relevant to our determination of the appropriate scope of common-law tort liability. We have not been given sufficient reason to significantly amend our tort law in the face of sound reasons for maintaining its current status.

5. *Conclusion.* For the foregoing reasons, we decline to expand the common-law duty of social hosts. Therefore, counts five and six of the plaintiffs' fifth amended complaint were properly dismissed. The matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*Judgment affirmed.*

BOTSFORD, J. (concurring in the judgment). I concur in the judgment of the court. I respectfully disagree, however, with the principal reasons that the court gives for its decision not to expand social host liability to apply to situations where an adult who does not furnish alcohol to underage guests nonetheless knowingly makes her home available to them to drink alcohol.

The court identifies "public policy considerations" and an absence of "clear existing social values and customs" as the bases for its decision not to expand social host liability.[1] *Ante* at 536, 537. In my view, both of these justifications fail.

With respect to the "policy considerations" referenced by the court as reasons not to expand our rule on social host liability, they seem to be those discussed in *Ulwick* v. *DeChristopher,*

---

[1] Justice Gants, in his concurrence, also appears to disagree with the court's assessment that no clear social values exist regarding whether parents should allow the underage guests of their children to consume alcohol in their home. *Post* at 544-545. I do not join Justice Gants's concurrence, however, in part because I am unpersuaded by his suggestion that different standards may apply to underage adults (i.e., adults between the ages of eighteen and twenty-one years) and those who are old enough to drink legally (i.e., adults over the age of twenty-one years). See *post* at 542-545, 547. If there is good reason to expand social host liability to adults who knowingly provide premises for underage drinking, the fact that the adult host cannot herself yet drink alcohol legally seems irrelevant. It is notable that adults as young as age eighteen can legally handle and sell alcohol in the course of employment (see G. L. c. 138, § 34), suggesting that the standard for social host liability should remain consistent for all adults, regardless whether they have attained the legal drinking age.

411 Mass. 401, 406-407 (1991). The *Ulwick* decision focused on the difficulty of being able to control a guest's excessive drinking when the guest has brought his own liquor. *Id.* at 406. The expansion of social host liability that is proposed here, however, concerns knowingly providing a venue where minors are allowed to drink. That it might be difficult to eject from a party in one's home an underage drinker who has brought his own alcohol and becomes intoxicated is not the point; the proposed rule of social host liability would counsel that the adult host should not have invited or permitted the underage drinker to attend the party in the first place.

Turning to the "clear existing social values and customs" that the court finds absent in this area, I believe that there clearly exists today a widespread social consensus that (1) underage drinking, especially when combined with driving, is a social problem of enormous significance[2]; and (2) we as a society are committed to preventing or limiting its occurrence in whatever ways we can. In terms of public steps taken to address the problem, in addition to the 2000 amendment, on which the plaintiffs here rely, the Legislature has attempted to curb underage drinking by providing penalties for those who both facilitate and partake in underage drinking. See G. L. c. 138, § 34 (providing penalties of up to $2,000 and year in prison for persons that furnish alcohol to individuals under age twenty-one); G. L. c. 138, § 34A (imposing penalties on persons under age twenty-one years who purchase or attempt to purchase alcohol, including $300 fine and suspension of driver's license for 180 days)[3];

---

[2]Underage drinking, as well as its relationship to drunk driving, is studied frequently and in depth, because of the recognition of its serious social and economic costs. See, e.g., Bouchery, Economic Costs of Excessive Alcohol Consumption in the U.S., 2006, 41 Am. J. Preventive Med. 516-524 (2011); Underage Drinking in Massachusetts: The Facts, Pacific Institute for Research and Evaluation (2011) (concluding that underage drinking in Massachusetts is widespread phenomenon, with over 300,000 underage drinkers; underage drinking cost citizens of Massachusetts $1.4 billion in 2010; and "[u]nderage drinking . . . leads to substantial harm due to traffic crashes, violent crime, property crime, unintentional injury, and risky sex"); Zakrajsek, Longitudinal Examination of Underage Drinking and Subsequent Drinking and Risky Driving, 37 J. Safety Research 443-451 (2006).

[3]The license suspension provision in G. L. c. 138, § 34A, was increased from ninety to 180 days in 1998, presumably reflecting the Legislature's intent to adopt a more aggressive posture toward underage drinking. See St. 1998, c. 220, § 8.

G. L. c. 138, § 34B (imposing penalties on persons altering drivers' licenses or liquor purchase identification cards, including $200 fine and imprisonment up to three months); G. L. c. 138, § 34C (imposing penalties on underage persons who possess, transport, or carry alcohol, including escalating fines and suspension of driver's license for ninety days); G. L. c. 90, §§ 24 (1) (*f*) (1) & 24P (*a*) (imposing graduated license suspension penalties for persons refusing to submit to blood alcohol or breathalyzer tests, with more severe penalties for individuals between ages eighteen and twenty-one years, and most severe penalties for minors).

This court has long been willing to consider changes to the common law of tort liability in recognition of the problems of drunk driving, and we have recognized that the justification for doing so may well be stronger when a minor is involved. See *McGuiggan* v. *New England Tel. & Tel. Co.*, 398 Mass. 152, 161-162 (1986). The breadth of the legislative response to underage drinking and driving offers specific support for the position that we can and should be prepared to expand our common-law rule of social host liability to include a case where an adult knowingly makes available her home or other location under her control for underage drinking. See *Biscan* v. *Brown*, 160 S.W.3d 462, 480-481 (Tenn. 2005) (in concluding that adult who hosted party for minors knowing that alcohol would be served had owed them duty of care, court relied in part on legislative policy determinations proscribing drunk driving and consumption of alcohol by minors).

Nevertheless, I would not expand the scope of social host liability at this time. My reason relates to the Legislature. Alcohol consumption and the alcohol industry have always been subject to comprehensive regulation by the Legislature. See generally G. L. c. 138. As the court notes, a number of bills have been filed over recent years seeking to add a civil liability provision to G. L. c. 138, § 34, itself. See *ante* at 537 n.18. These bills have been rejected to date, but they reflect legislative interest in regulating the very issue we consider here. Knowing of the Legislature's involvement in and concern about the regulation of alcohol consumption by minors in particular, and in recognition of the fact that, as pointed out by the court, *ante* at n.17,

expanding social host liability raises complex issues of insurance coverage among others, it is prudent to give the Legislature time to address the issue raised in this case. Cf. *Hannigan* v. *New Gamma-Delta Chapter of Kappa Sigma Fraternity, Inc.,* 367 Mass. 658, 659 (1975) (while court has authority to abolish common-law doctrine of sovereign immunity, "it is preferable that the Legislature should have a reasonable opportunity to accomplish by statute this change in the law"). At the same time, we should provide a message that if the Legislature does not act within a reasonable amount of time, when the appropriate case arises we are inclined to change our common-law rule governing social host liability. Cf. *Whitney* v. *Worcester,* 373 Mass. 208, 210 (1977) (court put Legislature on notice that if it did not define limits of governmental immunity and liability, court intended to abrogate doctrine of municipal immunity in first appropriate case raising issue after conclusion of legislative session).[4]

GANTS, J. (concurring in the judgment, with whom Ireland, C.J., joins). I agree with the court that where, as here, an underage social host knowingly allows underage guests to use her home to drink alcohol, but does not herself supply the alcohol, we should decline to impose social host liability on the underage host. I differ with the court in that I would limit our holding to an underage host, and would wait until we are presented with a case where a social host who has reached legal drinking age knowingly allows underage guests to use his or her home to drink alcohol before we decide whether to extend our holding to all social hosts.

I believe that such restraint is the more prudent course here for two related reasons. First, it is not difficult to imagine egregious circumstances where an adult of legal drinking age encourages underage guests to "bring your own beer or booze" to get drunk at his or her house, one of whom later kills or cripples someone while driving home, that might cause us to

---

[4]In an apparent response to *Whitney* v. *Worcester,* 373 Mass. 208 (1977), the Legislature enacted G. L. c. 258 (Massachusetts Tort Claims Act) in 1978, less than one year after that decision was issued. See St. 1978, c. 512, §§ 15, 16.

look differently at whether we should impose liability on such an irresponsible social host. It is worth recalling the tragic event that spurred the Legislature to adopt the amendments to G. L. c. 138, § 34 (St. 2000, c. 175), that made it a crime "to knowingly or intentionally supply, give, or provide to or allow a person under 21 years of age . . . to possess alcoholic beverages on premises or property owned or controlled by the person charged." In June, 1996, an eighteen year old teenager who had recently graduated from preparatory school attended a party hosted by the father of a fellow student, where teenagers drank from unsupervised beer kegs and adults played drinking games with the teenagers. The teenager died when he was trying to drive home in his automobile with a blood alcohol level of .19 per cent, more than twice the legal limit for an adult, and crashed into a telephone pole. The following year, the adult host of the party was acquitted of the misdemeanor charge of providing alcohol to a minor, which suggests that there was at least a reasonable doubt whether the adult host had supplied the alcohol for the party.

Under the court's decision today, if similar tragic facts again arose, a social host who has reached the legal drinking age would not be liable in tort if he or she did not provide the alcohol for the party, even if the underage guest had killed a pedestrian, passenger, or another motorist while driving home. I am not yet convinced that this is the correct result under the common law where the social host is not himself or herself underage. Therefore, I think it wiser to limit our holding to underage social hosts, and wait for a case where the defendant social host is legally allowed to drink alcohol before extending our holding beyond the facts presented here.

Second, I am not yet persuaded that the policy reasons articulated by the court for denying social host liability apply with equal force where the social host is twenty-one years of age or older rather than underage. While I join the court in concluding that the underage defendant in this case is not liable in tort as a social host for knowingly allowing the underage drunk driver to drink alcohol in her home, I do so because of the "practical difficulties" identified by the court in *Ulwick* v. *DeChristopher*, 411 Mass. 401, 406 (1991) (*Ulwick*): "Hosts in

these circumstances might be left with little alternative than to resort to physical force in order to discourage further drinking or to try to eject the guest, a solution that in many cases will aggravate the situation and put the drunk driver where he should not be — behind the wheel of a car." In *Ulwick*, as here, an underage person was allowed to drink at the home of an underage host when the host's parents were away. *Id.* at 402-403. I share the *Ulwick* court's concern about these "practical difficulties" where an underage host, without the assistance of his or her parents, attempts to remove an underage guest who brought alcohol to a party in the host's home. But I am not yet convinced that these practical difficulties are the same if the underage host's parents are present or if the host himself or herself is twenty-one years of age or older. And I am not yet convinced that these practical difficulties are the same now as they were when the *Ulwick* case was decided because, nine years after the *Ulwick* decision, the Legislature specifically made the conduct at issue a crime.[1]

Nor am I persuaded by some of the court's reasons for its broad holding. The court declares that "we are reluctant to impose a duty of care in the absence of 'clear existing social values and customs' supporting such a step," *ante* at 537, quoting *Remy* v. *MacDonald*, 440 Mass. 675, 678 (2004), and claims there is no " 'community consensus' regarding the proposed expansion of social host liability." *Ante* at 537, quoting *Schofield* v. *Merrill*, 386 Mass. 244, 248 (1982). As best I can tell, there exists a "clear existing social value[]" that parents not allow the underage guests of their children to drink alcoholic beverages at

---

[1]Justice Botsford, in her concurrence, correctly notes that the Legislature does not allow persons to drink alcohol until they are twenty-one years of age but allows persons to serve alcohol in licensed establishments at eighteen years of age. G. L. c. 138, § 34. She concludes from this that "the fact that the adult host cannot herself yet drink alcohol legally seems irrelevant" in determining the scope of social host liability. *Ante* at 539 n.1 (Botsford, J., concurring). Such a distinction in the common law would derive, not from logic, but from our experience that older hosts who allow underage guests to drink alcohol in their homes are deemed more culpable than underage hosts and are better able to enforce such a prohibition without force or violence. I note, as does the court, that three of the six States (Hawaii, Minnesota, and Texas) that by statute have imposed civil liability on social hosts who allow underage drinking in their homes limit liability to hosts who are twenty-one years of age or older. See *ante* at 538.

their home. I have no clue whether there is a "clear existing social value[]" or a "community consensus" that these adults *not* be liable for the injuries caused when an underage guest they had permitted to drink at their home kills or maims someone while driving home. But I am convinced that the court cannot establish the absence of a "clear existing social value[]" or a "community consensus" based on "the Legislature's subsequent refusals" to enact a statute imposing social host liability where the social host violates G. L. c. 138, § 34, but does not supply the alcohol. *Ante* at 537.

We have long recognized the need to be wary of any supposed inference based on legislative nonaction, especially where, as here, "the Legislature's subsequent refusals" are nothing more than bills failing to emerge from the committee where they were filed. See, e.g., *Simon* v. *State Examiners of Electricians*, 395 Mass. 238, 247 (1985) ("postenactment history is not ordinarily considered as showing legislative disapproval of the rejected amendments"). In the 2003-2004 legislative session, one senator submitted a bill proposing that any person violating the criminal statute would be liable in tort where an underage driver under the influence of alcohol causes injury or death. The bill was referred to committee where it remained with an order for further study. See 2003 Senate Doc. No. 1100, 2003 Senate J. at 93A; 2004 Senate Doc. No. 2288. For the next three sessions, the same senator reintroduced the identical bill and each bill again remained in committee without triggering debate or further legislative action. See 2005 Senate Doc. No. 1020; 2006 Senate Doc. No. 2633; 2007 Senate Doc. No. 968; 2007 Senate J. at 81A; 2009 Senate Doc. No. 1775. There was no discussion or vote by the Legislature on the proposal.

The "fallacy" in the court's reasoning is that "no one knows why the legislature did not pass the proposed measures. . . . The practicalities of the legislative process furnish many reasons for the lack of success of a measure other than legislative dislike for the principle involved in the legislation." *Franklin* v. *Albert*, 381 Mass. 611, 615-616 (1980), quoting *Berry* v. *Branner*, 245 Or. 307, 311 (1966). Even if there were a policy reason why these bills did not emerge from committee, we cannot know whether the reason was a legislative judgment that these matters of civil liability should be left to the courts to decide

under the common law. See *Franklin* v. *Albert, supra* at 616, quoting H. Hart & A. Sacks, The Legal Process: Basic Problems in the Making and Application of Law 1395-1396 (tent. ed. 1958) (listing reasons legislators may not support particular bill, including "[b]elief that the matter should be left to be handled by the normal processes of judicial development of decisional law . . ."). As this court has stated in the past, "we reject the suggestion that defeated legislative proposals have the power to disable us, in a proper case, from considering the questions presented by such proposals and from abandoning prior conclusions that now seem inappropriate." *Franklin* v. *Albert, supra* at 617. See *Superintendent of Schs. of Leominster* v. *Mayor of Leominster*, 386 Mass. 114, 118 n.11 (1982) ("consideration and rejection of various proposed measures do not control our decision").

The court also appears to fear what it characterizes as "[p]otentially vast consequences to liability insurance" if social hosts who violate G. L. c. 138, § 34, by allowing underage guests to consume alcohol in their home were subject to civil liability. *Ante* at 537 n.17. This fear is probably overstated because liability insurance policies often exclude criminal acts from coverage. See 7A G. Couch, Insurance § 103:40 (3d ed. 2005). But even if an expansion of social host liability were to result in an increase in liability insurance claims, that is not a sufficient reason to rule against such an expansion where the common-law rules of liability need to be changed. See, e.g., *Papadopoulos* v. *Target Corp.*, 457 Mass. 368, 369 (2010) (abolishing distinction between natural and unnatural accumulations of snow and ice). Nor can I accept the court's suggestion that the Legislature's regulation of insurance coverage somehow affects whether we should revise a common-law duty of care, because *any* change in the common-law duty of care will likely have consequences for liability insurers and policy holders. If we were to conclude that we should defer to the Legislature regarding a common-law duty of care where it will affect insurance coverage, we would frustrate the necessary evolution of the common law of tort liability.

Finally, the court professes concern about "the difficulties," which it contends are "manifold," that judges and juries would

face if the existence of a duty turned on control of the premises rather than on the supply of alcohol. *Ante* at 537. This "difficulty" is not so dire. General Laws c. 138, § 34, imposes criminal liability on any person who knowingly or intentionally allows an underage person to possess alcohol "on premises or property owned or controlled by the person charged." If civil liability were to mirror criminal liability, courts would need to determine when a person "controlled" a premises, which courts routinely do in other matters of common law. See, e.g., *Bishop* v. *TES Realty Trust*, 459 Mass. 9, 19 (2011), citing *Humphrey* v. *Byron*, 447 Mass. 322, 328-329 (2006) (in determining tort liability, court must evaluate whether lessor of commercial premises retains control).

Therefore, I concur in the judgment, but would limit the holding to underage hosts, and wait for a case where the host was at least twenty-one years of age before establishing a rule that would protect all social hosts from civil liability for allowing their homes to be used by underage guests for "bring your own beer or booze" parties.